ADAMS v. FOLEY et al.

In an action between the creditors of the vendor and the vendee, to defeat a sale of property alleged to have been made with intent to defraud creditors, the vendor is a competent witness for the creditors, to prove facts tending to establish the alleged fraud.

The vendor being a competent witness for the creditors, in such a case, to prove facts tending to show a fraudulent sale of the property, his widow is also a competent witness to prove similar facts.

Where in an action of trespass by the vendee, against a sheriff and certain creditors of the vendor, for seizing and carrying away certain personal property, the defendants justified under certain writs of attachment and executions, and alleged that the sale to the plaintiff, was made with intent to defraud the creditors of the vendor, which was denied by the replication; and where the defendants on the trial, offered the widow of the vendor as a witness, to prove circumstances tending to show that the sale to the plaintiff was fraudulent, and made with intent to hinder and delay the creditors of her late husband, to which witness the plaintiff objected, that she was incompetent, on the ground of interest, which objection was sustained, and the witness not allowed to testify; Held, That the witness was competent, and that the court erred in sustaining the objection.

A cause will not be reversed on account of an erroneous instruction, which could work no prejudice to the party complaining.

Where in an action of trespass to personal property, by the vendee against the sheriff and creditors of the vendor, it appeared from the evidence, that at the

Adams v. Foley et al.

time of the alleged sale to the plaintiff, the goods were in Illinois; that they were afterwards removed to Sabula, Iowa, and deposited in the name of the vendor, with certain warehousemen, who executed to the vendor the usual warehouse receipts; that in part payment for the goods, the vendee drew on one A. of New York, for four thousand dollars; that it was agreed between the vendor and vendee, that the goods should be deposited in these warehouses, in the name of the vendor, until said draft was duly accepted; that after the sale, the vendor and vendee went to Chicago, and there deposited the warehouse receipts, with R. and S., indorsed in blank by the vendor, with the agreement that they were to be delivered to the plaintiff, or held by R. and S. for his use, whenever they were advised of the acceptance of the draft by A.; that the vendor was owing R. and S., and upon the acceptance of said draft, they were to credit him with the amount; and that the draft was accepted, and notice given thereof to R. and S., or that R. and S. gave the vendor credit for the amount of the draft, prior to the levy of the attachments under which the defendants justified; and where the court instructed the jury as follows: That where goods are left with a warehouseman, who gives his receipt for the same, the sale of the goods, and assignment of the warehouse receipts, and delivery of them to the purchaser, is a delivery of the goods;" *Held*, That the instruction was correct.

Where in an action of trespass to personal property, by the vendee, against a sheriff and certain creditors of the vendor, the defendants, for the purpose of defeating the sale under which the plaintiff claimed, asked A., a witness called by them, the following question: "While B. M. (under whom the plaintiff claimed,) and W. were in possession of the goods, and on or about the first of January, 1854, did they or not, agree to send the goods over the river to Sabula, in Iowa, to be out of the way of their creditors, or the creditors of B.?" to which interrogatory, the plaintiff objected, and the court sustained the objection; and where it did not appear from the record, that the question was objected to in the court below, on the ground that it was leading in its character, though that objection was urged in the appellate court; *Held*, 1. That the court erred in sustaining the objection to the interrogatory; 2. That the objection that it was leading, was not valid, unless made at the time the question was propounded.

## Appeal from the Jackson District Court.

On the 17th of January, 1854, the defendant Foley, as sheriff of Jackson county, attached certain goods, wares, and merchandise, by virtue of several writs of attachment, in favor of his co-defendants, and against one Boyd. Judgments were afterwards rendered in favor of the attaching creditors, and the property so attached, sold under execution to satisfy said debts. The plaintiff thereupon brought his action of trespass against the sheriff and the said creditors, for the

value of the goods, claiming that at the time of the levy of said attachments, they belonged to him, as the vendee of one Marsh. The defendants all answer, admitting the sale under the executions, and denying that said goods were the property of plaintiff, but averring that they belonged to said Boyd. During the trial, certain testimony was rejected, and instructions given, as will sufficiently appear from the opinion of the court, to which defendants excepted. Verdict for plaintiff in the sum of seven thousand eight hundred and eighty-three 33-100 dollars. Motion for a new trial overruled. Judgment on the verdict, and defendants appeal.

*J. B. Booth*, and *Clark & Bissell*, for the appellants, contended:

1. The court erred in rejecting the testimony of Mrs. Boyd. She had no such interest in the question as to render her incompetent. *Stewart* v. *Kip*, 5 Johns. 256; *Falls & Smith* v. *Belknap*, 1 Ib. 490; *Baker* v. *Arnold*, 1 Caines, 274; *Walton* v. *Shelley*, 1 Term, 300; 3 Kinney, 148; *Carter* v. *Pearce*, 1 Term, 163; *McLeod* v. *Johnson*, 4 Johns. 126; 18 Pick. 108; 6 Eng. Com. Law, 467; *Cutler* v. *Copeland*, 18 Maine, 127; *Sawyer* v. *Felton*, 1 Rawle, 141; *Jommer* v. *Sommer*, 1 Watts, 303; 8 Wend. 490; 1 Phil. Ev. 84, 119; 3 Ib. 77. A mere interest does not disqualify. There is a manifest distinction between a *mere* and a direct interest. 3 Phil. Ev. (3d ed.) 36, note 32; 3 Johns. Cases, 83. She came to support no right of her own. 3 Phil. Ev. 38, 40, 42; 2 Starkie on Evidence, 401, note 1; 1 Greenleaf's Evidence, (6th ed.) §§ 341, 390. Her interest, if any, was a balanced interest. Greenl. Ev. 420; 2 Phil. Ev. 126, note 117. The interest must be in the result of the cause. 1 Greenleaf's Evidence, § 386.

2. The court erred in overruling the question to Atherton. If answered affirmatively, it contradicted Marsh, and defendants had a right to prove the acts and declarations of Boyd and Marsh, while in possession of the goods, as evidence of fraud. *Jackson* v. *Mather*, 7 Cowen, 301.

3. The court erred in giving the jury the first and second

instructions.   The second is in conflict with the decision of this court, in the case of *Merchants and Mechanics' Bank of Chicago* v. *Hewitt*, 3 Iowa, 93, and was calculated to mislead the jury.   Code, § 1193 ; 3 McLean, 551 ; 18 Mis. 281 ; 6 Barbour S. C., 79 ; 2 Kent's Com. (8th ed.) 676 ; *Welsh* v. *Hayden*, 1 Pennsylvania, 57 ; *Sturtevant* v. *Ballard*, 9 Johns. 338 ; 4 Scam. 296.

·   *Wm. E. Leffingwell*, and *Smith, McKinlay & Poor*, for the appellee.

The principal error assigned by the appellants, is the rejection of Mrs. Sarah Boyd, (the widow of Thomas A. B. Boyd,) as a witness.   In order to ascertain whether she was a competent witness, it is necessary that the true position of Boyd, her husband, and of herself, in relation to the case, be understood.   The history of this case is simply this : Boyd was largely indebted to the appellants, who commenced suit by attachment, on the 17th day of January, 1854, and levied upon the goods in controversy.   Boyd had been engaged in the mercantile business, and Boyd, Marsh and Wright, had been engaged in the produce business.   The firm of Boyd, Marsh & Wright, were large indebted to the firm of Ring & Smith, of Chicago, for cash advances, to enable them to purchase produce.   Ring & Smith, being dissatisfied with the firm, but friendly to Marsh, agreed with Marsh, upon his becoming responsible to them to pay their claims at a given day, to give Marsh an extension of time, and to look to him individually for their claims.   In order to meet this demand, Boyd sold the goods to Marsh, and Marsh, on the 20th of December, 1853, finding a purchaser in Adams, (the plaintiff,) sold the goods to him at ten per cent. less than New York cost, amounting to about seven thousand dollars, of which sum four thousand dollars was paid by a draft, drawn by plaintiff on H. P. Adams, in New York, with the understanding that the goods should be invoiced, boxed and stored in Sabula, and that the draft and warehouse receipt, should be deposited with Ring & Smith, in Chicago, and upon the acceptance of the draft by H. P. Adams, the warehouse re-

ceipts should be held by Ring & Smith, for the plaintiff, and the sale should be consummated. Upon the 4th day of January, 1854, the draft was accepted and paid, and the amount of $4,000 placed to the credit of Marsh, by Ring & Smith; the warehouse receipts were all then delivered to Ring & Smith, for Adams, the last being delivered on the 10th of January, 1854, seven days before the attachments were levied; and the balance of the purchase money for the goods, was paid by Adams to Marsh, in the month of March following. The goods were taken upon attachments against Boyd, on the 17th of January, 1854, and were afterwards sold upon judgments against him. This action, then, is brought against the sheriff and Boyd's judgment creditors, to recover the value of the goods. Mrs. Boyd, who is introduced for the purpose of proving upon her husband, a fraud, is rejected as incompetent, and we think properly, for various reasons.

The wife will not be permitted to impeach, or in any way criminate the husband, except it be for injuries to her person. Section 2391 Code; Peake's Evidence, 174, marginal; *Com.* v. *Eastland,* 1 Mass. 15; *Beveridge* v. *Winter,* 1 Car. & P. 364; *Tedly* v. *Wellesby,* 3 Ib. 558; *Campbell* v. *Twemlow,* 1 Price, 81; *Batthews* v. *Galindo,* 4 Bingham, 610. If Boyd himself was incompetent, so is his wife. 1 Greenleaf's Evidence, § 341; *Griffen* v. *Brown,* 2 Pick. 30; *Fitch* v. *Hill,* 11 Mass. 286. In all cases where the husband or wife are interested in the event of the proceedings, the principle of the rule for the exclusion of their testimony, is carried to its fullest extent, 1 Phillipps' Evidence, 70; *Davis* v. *Dinwoodie,* 4 T. R. 678. And the objection to their competency, is not removed by a dissolution of the marriage relation. 1 Phillipps' Evidence, 75; *Averson* v. *Kinnard,* 6 East, 192; *Docker* v. *Hasler,* 1 Ry. & Mo. 198; *Ewes* v. *Hunter,* 4 Gillman, 21; *Stein* v. *Boorman,* 13 Peters, 209. Boyd himself would have been incompetent, for by testifying, his interest would cause him to establish the title to the goods in himself, and thereby discharge the appellants' claims against him. See 3 Cow. & Hill's Notes, 225. The case of *Bland* v. *Ans-*

*ley,* 2 New Rep. 331, is precisely in point. In that case, the question was, whether the sheriff had lawfully seized the goods of A., under an execution against B., and B. was held to be an incompetent witness to disprove A.'s title to the goods; for, said the court: "The effect of his testimony, would be to pay his own debt with the goods which had been seized." See also, *Nathan* v. *Buckland,* 2 B. Mon. 153 ; *Favor* v. *Marlett,* 1 Gillman, 385. Boyd would also have been incompetent to prove that the transaction between himself and Marsh, was a fraud.

Mrs. Boyd was also incompetent, upon the ground of interest. She was directly interested in the result of the suit. By disproving the plaintiff's title to the goods, and establishing title in her husband, she would by her testimony, appropriate the goods to the discharge of her husband's debts, to that amount, and thereby receive her additional distributive share of his estate, to that amount. It is, however, contended, that she was competent, for the reason that her interest was *balanced.* The interest of the proposed witnesses in *Bland* v. *Ansley,* and in *Favor* v. *Marlett,* were as nicely balanced as in this case, yet the court held them to be incompetent. In this case, the interest of the witness is attempted to be balanced in a peculiar manner. It is said that Boyd was liable to Adams upon an implied warranty of title, and that Boyd's wife is competent to show the sale to be fraudulent. Therefore, her interest is a balanced interest. If the sale was fraudulent, as is contended, could Adams, in a court of law or equity, claim anything of Boyd, his confederate in the fraud? Most assuredly not; the fraud vitiates everything. Then the design and tendency of Mrs. Boyd's testimony, would be simply this, to establish the title of the goods in her husband, and thereby discharge $7,000 of his debts; and at the same time, protect his estate from a recourse by Adams on his executors, for the money paid by him for the goods, by reason of her husband's and Adams' fraud. The interest of the witness is clearly in favor of the party calling her, and in no other, and she is incompetent for them.

The exception taken by the appellants, in relation to the
VOL. IV.        4

charge of the court, " that the delivery of the warehouse re-
ceipts, was a delivery of the goods," is untenable.   See *Shind-
ler* v. *Houston*, 1 Conn. 261 ; 2 Kent Com. 499, 503.

The payment of the $4,000 draft, takes the case out of the
statute of frauds, and upon this proof, and the delivery of
the warehouse receipts, Adams can hold the goods against
the world.   *Morton* v. *Thibbits*, 15 Ad. & El. (N. S.) 428.

WRIGHT, C. J.—It is first claimed, that the court erred
in excluding the testimony of Mrs. Boyd, the widow of the
attachment defendant, when offered by the appellants.   To
fully understand the question here presented, a brief refer-
ence to the testimony and position of the parties, becomes
necessary.   The defendants insist that the sale from Marsh
to plaintiff, was not, at the time of the attachment of the
goods, so complete, as against them, as to pass the title ; but
that if it was, it was fraudulent and made to hinder and
delay the creditors of said Boyd.   It seems that Boyd, Marsh
and Wright, had been in partnership as merchants ; and the
plaintiff claims, that prior to the sale to him, Marsh had pur-
chased the interest of the other parties in said goods.   On
the other hand, defendants insist that there was no sale to
Marsh, or if any, that it was fraudulent, and that in truth and
in fact, there was a combination between plaintiff, Boyd and
Marsh, to defraud the creditors of Boyd ; and that the sale
to plaintiff was made with that object and purpose.   After
the attachments were levied, and before the trial of this case,
Boyd died, and as shown by the bill of exceptions, his widow
was offered as a witness, by defendants.   It was not sought
to elicit from her, any conversation between her and her late
husband, or any communication he may have made to her
on the subject of said sale, but to prove circumstances within
her knowledge, which might tend to show, that the sale to
plaintiff was fraudulent, and made to hinder and delay the
creditors of her late husband, as also the creditors of the firm.
Being objected to by plaintiff, *on the ground of interest*, the
witness was not allowed to testify to these matters, and de-
fendants excepted.   .

Was the witness competent ?   Whether Boyd, if living,

Adams v. Foley et al.

would be a competent witness, is a question upon which the authorities are by no means agreed. It is believed, that it has never been determined in this state. Treating it as a new question, therefore, in this court, which rule shall we adopt? We answer, that while we have some hesitation, yet upon the whole, we incline to the opinion that he would be competent, and shall so hold. His interest, we regard as a balanced one—his liability equal, whatever the result of the suit. This is the ground taken by those authorities which hold the vendor to be a competent witness for an execution plaintiff; and it recommends itself to us, as being quite as just and reasonable as the contrary rule. And aside from the influence of adjudicated cases, two considerations have had weight with us, in arriving at this conclusion. The first is, the rule recognized in *Cutter* v. *Fanning*, 2 Iowa, 580, that courts will let in truth, whenever precedent will admit it, by holding objections to apply to the credit, rather than the competency of a witness. To give this rule a liberal instead of a restricted operation, is the tendency of all the more recent legislation and decisions in the several states. In the second place, while it is said in trials of this character, involving questions of fraud, that the interest of the vendor is with the creditor, and against the claimant, the experience of every lawyer will sustain the assertion, that in nine cases out of ten, the feelings—the strongest bias, if not the interest—of the witness, is with the vendee or claimant, and his whole effort is to defeat his creditor. We, therefore, conclude that Boyd, if living, would be a competent witness; and as a consequence, that his wife should have been admitted when offered by the defendants. It is not improbable that she would be competent, though he might have been incompetent. But without determining this, it is sufficient to say, that if he would be competent, *she* would most certainly be.

The counsel for appellee insist, that the testimony was properly excluded for other reasons. Without referring to them, however, it is sufficient to say, that the only objection made and determined in the court below, was *that the witness*

*was interested*, and beyond this, in strictness, we should not go. The better practice, we think, is for this court, in the adjudication of causes, to confine itself to the disposition of those questions which were heard and determined in the court below. Cases may arise where a departure from this rule, will become necessary. This, in our opinion, is not one of them, and as to such other objections, therefore, we intimate no opinion.

The next assignment of error relates to certain instructions, given as asked by the plaintiff. It seems that the goods at the time of the alleged sale, were in Savannah, Illinois, but were afterwards removed to Sabula, Iowa, and deposited in the name of Marsh, with certain warehousemen. For the goods thus deposited, the usual warehouse receipts were taken, the first bearing date January 3d, and the last January 9th, 1854. In part payment for the goods, as the testimony tends to show, plaintiff drew on one H. P. Adams, of New York, for four thousand dollars; and it was agreed, that the goods were to be deposited in these warehouses, in the name of Marsh, until said draft was duly accepted. Marsh and the plaintiff, after the sale, went to Chicago, and there deposited the warehouse receipts with Ring & Smith, indorsed in blank by Marsh, with the agreement that they were to be delivered to plaintiff, or held by them for his use, whenever they were advised of the acceptance of said draft by H. P. Adams, of New York. Marsh was owing Ring & Smith, and upon the acceptance of said draft, they were to credit him with the amount. It is fairly inferable from the testimony, either that this draft was accepted, and notice thereof given to Ring & Smith, prior to the levy, or that they, prior to that time, gave Marsh credit for the amount thereof upon their books. Under this testimony, the court instructed the jury: " *First*. That the assignment of a warehouse receipt in blank, is, in law, presumed to have been made and delivered to the holder of the same, on the day when the original receipt was executed, and this presumption must be rebutted by positive testimony. *Second*. That where goods are left with a warehouseman, who gives his

receipt for the same, the sale of the goods, and the assign-ment of the warehouse receipts, and delivery of them to the purchaser, is a delivery of the goods." Inasmuch, as the tes-timony sufficiently shows when, in fact, the warehouse re-ceipts were assigned, and that such assignments and delivery were prior to the levy of the attachments, it is unnecessary to consider whether the first instruction, as an abstract propo-sition, is or is not correct.    To ascertain the time of the trans-fer, the jury had sufficient evidence, without resorting to the legal presumption that they were assigned on the day of their date.    And should we even conclude, that the instruc-tion was erroneous, the case would not, for that reason, be re-versed, for it would be, at most, but an error without pre-judice to the party complaining.    *Hayden* v. *Plummer*, 2 Hill, 205; *Atkinson* v. *Lester*, 1 Scam. 407; *U. S.* v. *Wright*, 1 McLean, 509; *Rhett* v. *Poe*, 2 How. 457.

The appellants insist, that the second instruction is in con-flict with the ruling of this court, in the case of *The Mer-chants and Mechanics' Bank of Chicago* v. *Hewitt*, 3 Iowa, 93. That was a suit by the assignee of a warehouse receipt in his own name, against the maker, to recover the value of certain corn therein named.    The defendant plead as a set-off, a claim against the original holder of the receipt, as well as some other defences.    The question was, whether such a re-ceipt was negotiable, so as to deprive the maker thereof of any legal or equitable defence, against the assignee, which he would have had, if the suit had been brought by the as-signor or original holder.    And did the question in this case, arise between the plaintiff or the assignee of these receipts and the warehouseman, that case would be applicable.    In that case it was held, that such a receipt might be assigned, so as to authorize the assignee to sue in his own name, but that the assignee took the same, subject to all the equities existing between the maker and assignor, before notice to the maker of the assignment.    Here the question, however, is whether the assignment and delivery of the receipts, and the goods therein named, is a sufficient delivery of the goods, as against creditors, there being no notice prior to said levy,

of such assignment, cith.:r to the warehousemen or the creditors. Appellants rely upon *Gibson* v. *Stevens*, 3 McLean, 551. The opinion of Judge McLEAN, in that case, recognizes a different rule from that laid down by the District Court in this. That was taken, however, to the Supreme Court of the United States, and reversed, and this second instruction accords with the unanimous opinion of that tribunal. 8 Howard, 384. See also *Conard* v. *The Atlantic Insurance Co.*, 1 Peters, 445; 2 Kent, 500; *Wilkes & Fontaine* v. *Ferris*, 5 Johns. 335; Story on Sales, § 311; *Gardner* v. *Howland*, 2 Pick. 599.

The third error assigned, relates to the refusal of the court, to allow defendants to propound the following questions to Atherton : " While Boyd, Marsh & Wright, were in possession of the goods, and on or about the 1st of January, 1854, did they or not agree to send the goods in question, over the river to Sabula, in Iowa, to be out of the way of their creditors, or the creditors of Boyd ?" The plaintiff insists, that the interrogatory was leading, and for that reason, was correctly held to be improper by the court below. It does not appear, however, that any such objection was made in the court below, and we are unwilling to allow such an objection to be valid, unless it was made at the time the question was asked, and an opportunity given to the party putting the question, to propound it in the proper form. The objection is, at most, but a technical one, and when made, is so easily obviated, that it cannot avail in this court, unless it appears to have been made in the court below. The question is, then, whether the testimony sought to be elicited was proper. For the purpose of proving fraud in the alleged sale by Marsh to plaintiff, the testimony was, of course, improper, unless it was shown that plaintiff had knowledge of such agreement, and of the purpose of the partners in thus sending the goods into Iowa. A fraudulent intention on the part of these partners, or on the part of Marsh, (of whom plaintiff claims to have purchased,) would not make the sale void, unless it was further shown that plaintiff participated in such fraud.

Adams v. Foley et al.

For other purposes, however, we think the testimony was proper. It is evident from all the testimony, that it was claimed on the one hand, that the partnership of Boyd, Marsh & Wright, was dissolved long before the sale to plaintiff, and that at the time of the sale, Marsh owned the entire stock; while on the other hand, it is insisted that Marsh was *not*, at the time, the sole owner. The plaintiff also insists that these goods were sent over the river after he had bought from Marsh, to be deposited in certain warehouses, until the draft was accepted, as heretofore stated. Now, if it could be shown, that after the alleged dissolution of this partnership, and after the alleged sale to plaintiff, the three partners were together, and treated these goods as their own, it would certainly tend to rebut the idea that they had previously dissolved, or that Marsh alone owned, or had a right to sell the goods. So, also, if the goods were sent into this state under this agreement, it would certainly tend to negative the claim that they were forwarded as Marsh's, under the arrangement set up by plaintiff. We, therefore, think this question should have been allowed to be put and answered. How far the answer to it, if in the affirmative, might tend to satisfy the jury that the goods were not the property of the plaintiff, it is not for us to inquire. It is sufficient to say, that if answered in the affirmative, it would tend to show that the partnership still continued, and that the goods were sent over the river, and left with the warehousemen, for a purpose other and different from that relied upon by plaintiff.

Judgment reversed.