SAMUELS V. GRIFFITH *et al.*

1. ORDER OF EVIDENCE. The Supreme Court will not interfere with the exercise of discretion by the District Court, as to the order in which evidence is introduced, except in cases of manifest abuse.

2. OBJECTION SHOULD BE MADE BELOW. An objection to the form of an interrogatory addressed to a witness, which was not presented to the court below, will not be considered by the Supreme Court.

3. EVIDENCE: IMPEACHMENT: DEPOSITIONS. When two different depositions of the same witness have been taken in the same cause, the first one taken cannot be introduced for the purpose of impeaching the second, when no foundation was laid in the second deposition by calling the attention of the witness when such second deposition was taken to the statements made in the first, for the purpose of affording him an opportunity to confirm or explain the same. A general statement in the second deposition that when the first was taken the witness was sworn in the usual form, and that his testimony was then correctly written out by the officer, is not sufficient.

*Appeal from Lee District Court.*

FRIDAY, APRIL 11.

PLAINTIFF sues in *trespass*, claiming $4,000 for certain goods and chattels, with force, &c., taken and carried away by defendants. The defendant justifies, under a writ of attachment against one Louis Baum. It is also averred that Baum owned the goods, and sold the same to plaintiff, with intent to defraud his creditors, &c. Issue thereon, trial and verdict for plaintiff, and defendants appeal.

*Samuel F. Miller* and *J. M. Beck,* for the appellant, each presented an oral argument, in addition to one printed, in which the following authorities were cited : 1 Starkie's Ev., 183, note 1 (marg.); 2 Phill. Ev., Cow. & Hill's Notes, 962 ; *Downer et al.* v. *Dana et al.*, 19 Verm., 344 ; *Cowden* v. *Reynolds*, 12 Serg. & R., 283 ; *Clapp* v. *Wilson*, 5 Denio, 285 ; *Pickard* v. *Collins*, 23 Barb., 456 ; *Williams* v. *Chapman*, 7 Ga., 467 ; *Drew* v. *Wadleigh et al.*, Id., 467 ; *Pearce* v. *Furr*,

Smedes & M., 47; *Crowley* v. *Page*, 7 Car. & P., 689; *Ware* v. *Ware*, 8 Maine, 29; *Tucker* v. *Welsh*, 17 Mass., 160; *French* v. *Merrill*, 6 N. H., 465; *Judson* v. *Blanchard*, 5 Conn., 557.

*Daniel F. Miller* for the appellee, in an oral argument, cited the following authorities : 3 G. Greene, 530; 8 Iowa, 451; Walker's Ch. R., 48; Gres. Eq. Ev., 141, 12 Georgia, 450; 20 Ohio, 87; 3 Duer, 421; 19 Wend., 437; 19 N. Y., 549; 12 Ala., 131; 19 Id., 581; *Conrad* v. *Griffey*, 16 How., 39; *Morrison & Myers* v. *Turner et al.*, 11 Iowa, 538.

WRIGHT, J. — Two questions are presented for our consideration.

I. Defendants read in evidence the deposition of one Rosenstien, in which, in reply to an interrogatory, the witness detailed a conversation with one Adolph Samuel, (brother of plaintiff,) in presence of plaintiff, which tended to show that the transaction through which plaintiff claimed title to the goods, was fraudulent. In rebutting, plaintiff was called, the said answer read to him, and he was then asked whether such " conversation ever took place in his presence or hearing." To the reading of this answer and the interrogatory, defendants objected. The objection was overruled. After this, and when the bill of exceptions embodying the facts had been prepared and presented to the court for signature, plaintiff's attorney asked leave to withdraw the question and answer, recall the witness, read the same answer, and ask the witness what he had to say in reference to that conversation. This was permitted, and the witness allowed to answer. To all this defendants excepted. It is certified that the court understood the objection, in the first instance, to relate to the reading of the answer to the witness, rather than the form of the interrogatory. And this action is the first matter assigned as error.

It may be admitted that the course of examination allowed, is not in accordance with good practice. And yet we cannot believe there was any such abuse of the large discretion wisely lodged with courts, in controlling the manner of introducing testimony, as to justify our interference. It is worthy of remark, that while in this court it is urged that the interrogatory, both before and after the preparation of the bill of exceptions, was leading, no such point was made in the court below. The objection cannot, therefore, avail. (*Foley* v. *Adams*, 4 Iowa, 44; *Mills et al.* v. *Mabor*, 9 Id., 484.) Not only so, but the certificate of the judge, as to this understanding of the facts, and the character of the objection, removes all possible difficulty.

II. Plaintiff used as evidence, the depositions of Adolph Samuel and Philip Rosenthall, taken Nov. 26, 1859, in the city of St. Louis, on a commission issued from the Lee District Court, in this state. In these depositions, they state that their depositions had been taken before in this case, before A. E. Verman, a Notary Public, that they were sworn in the usual form, and that their testimony was then correctly written out by that officer. The witness, Samuel, also states that he bought the goods from Baum for his brother, the plaintiff, under a power of attorney which was attached to the said prior depositions. The depositions thus referred to were suppressed, because of some informality. Plaintiff also used as evidence the power of attorney referred to, which was found attached to the suppressed depositions. The certificate to the depositions first taken, shows that the witnesses were properly sworn, and subscribed the same. After the plaintiff rested his case, defendants offered to read in evidence the suppressed depositions, in order to impeach said witnesses, claiming that they had therein testified to important and material facts which contradict matters stated by them in the depositions used on the trial. The introduction of this

testimony plaintiff objected to, upon the ground "that defendants had not asked the witnesses on their last examination as to their testimony in the first, and given them a chance to confirm, or explain, the same,—that the words contained in the first deposition should have been called to their attention." The objection was sustained, and defendants excepted.

The question here presented is not free from difficulty. The authorities are not uniform, and the reasoning is not without weight which is brought to bear on either side of the controversy. In our own state, the precise question is an open one, and we are now called upon to settle it. The English rule, and the one adopted in most of the states, as applied to verbal statements out of court, is, that the attention of the witness shall first be called to the time, place and person, involved in the supposed contradiction. In the Queen's case, the subject was fully discussed, and the rule thus recognized. "The legitimate object of the proposed proof is to discredit the witness. Now the usual practice of the courts below, and a practice to which we are not aware of any exception, is this : if it be intended to bring the credit of a witness into question by proof of anything that he may have said or declared touching the cause, the witness is first asked, upon cross-examination, whether or no he has said or declared that which is intended to be proved." And again, "If evidence of this sort could be adduced on the sudden, and by surprise, without any previous intimation to the witness or to the party producing, great injustice might be done ; and, in our opinion, not unfrequently would be done, both to the witness and to the party ; and one of the great objects of the course of proceeding established in our courts, is the prevention of surprise, as far as practicable, upon any person who may appear therein." (2 Brod. & Bing., 313.) And says Mr. Greenleaf (1 Ev., § 462), "This course of proceeding is

considered indispensable, from a sense of justice to the witness; for, as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statement already given, as well as by a re-examination to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said." As applied to verbal statements, this rule has been recognized in this state. (*Glenn* v. *Carson*, 3 G. Greene, 529; *State* v. *Ruhl*, 8 Iowa, 447.) And we cannot see why the reason of the rule does not apply with equal weight in the case of depositions.

Counsel claim that the rule, if extended to letters, written agreements and affidavits, should not be to depositions, and that in this way the authorities can be reconciled. To our minds, however there are as strong, if not stronger, reasons for extending it to depositions, as to *ex parte* affidavits and instruments of that nature. A letter or affidavit usually refers to some one distinct matter. A deposition is often voluminous, containing answers to a great number of interrogatories propounded in the various forms suggested by the ingenuity of counsel. It is sworn to it is true, but the witness is not apt to have that personal interest in its contents, nor to remember all that he said, nor its object and purpose, as in the case of an affidavit made for some specific purpose. Months or years afterwards he may be examined in the same case. He is asked if at such a time his deposition was taken, and the instrument is fully identified. There is no intimation, however, that this identification is for the purpose of introducing his former testimony to impeach him. His attention is not called to anything he then stated. No opportunity is given him to explain, for he is not advised that explanation may possibly be necessary.

Now, in what does such a case differ, in principle, from that of a witness who has been previously examined upon the stand? And would it be claimed that a party could, by asking him if he did not, on a day and before a court named, testify in the same cause, and if his testimony at that time was true, thus lay the foundation, without more, to impeach him? It seems to us most clearly not. Common justice would certainly dictate that he should be first asked, whether or no he swore to that which is intended to be proved.

It is suggested that the deposition is a writing, carefully written out, read over to the witness and by him subscribed, and that in these respects it differs from testimony upon the stand. These differences are admitted, and yet we do not see how they can affect the reason of the rule. Why should the witness not have an opportunity, in the one case as well as the other, to correct the statements already given, as well as by a re-examination, to explain the nature, circumstances, meaning and design of what he had previously sworn to? We can see no good reason for the application of a different rule in the two cases. Nor can we see why the introduction of such impeaching testimony would not work a surprise upon parties, and thus produce injustice in the case of depositions, as well as in that of verbal statements.

Nor is this view, as before suggested, without authorities to sustain it. In the case of *Stephens* v. *The People*, (19 New York,) counsel for the prisoner offered the depositions of certain witnesses, taken before the coroner, for the purpose of impeaching their testimony on the trial. It was held that such parts of the depositions as had been called to the attention of witnesses, during their examination, might be read, but that the rest should be rejected. STRONG, J., remarking that "if it was designed to discredit the witnesses by showing that their evidence before the coroner

differed from that given by them on the trial, they should have been previously furnished with an opportunity for explanation" (p. 570). And to the same effect are the cases of *Conrad* v. *Griffey*, 16 How., 45 ; *Howell* v. *Reynolds*, 12 Ala., 131 ; *Morrison* v. *Myers*, 11 Iowa, 538.

But it is urged that in this case there was a sufficient compliance with the rule, that the attention of the witness was called to his previous testimony. To some extent we have already answered this position. It would certainly be assuming too much to say that the witness was notified that he was to be impeached, or that he was furnished an opportunity for explanation. As well might it be claimed that he was furnished with an opportunity in the case of verbal statements, if he was asked if he did not at a particular time and place, have a conversation with a particular person on the subject matter of the suit. Such a course of inquiry is not a compliance with the spirit of the rule. *Pendleton* v. *Empire Company*, 19 N. Y., 13. Nor is the course adopted in this instance any more so.

The presence of the first deposition, at the time of taking the second, was not necessary to enable the party to lay the required foundation. The interrogatories accompanying the second commission might have been framed so as to meet the case of a possible or expected conflict. Or, if not this, a new commission could have been issued, at the instance of defendants, for the purpose of laying the proper foundation.

The judgment is

Affirmed.