## J. J. JOHNSON, *et al. v.* R. H. MATHEWS.

### *Error from Bourbon County.*

1. EVIDENCE: SECONDARY.—Where the only evidence of the loss or destruction of a written instrument, is that of one witness, who testifies as follows: "The order is now so mislaid that I cannot find it," *Held*, that all oral or other secondary evidence of its contents, is incompetent and inadmissible.

2　TRIAL: OBJECTIONS TO EVIDENCE.—The proper time to object to the introduction of testimony for incompetency, is when such testimony is offered in evidence at the trial.

3. EVIDENCE: DEPOSITIONS.—A party who does not object while a deposition is being taken, to the testimony of a witness, on the ground that it is or may be at the trial incompetent, does not thereby waive his right to make such objection at the trial. It seems that this is the only proper time for such objection.

4. DAMAGES: REMOTE.—The plaintiffs in their petition allege: that the defendant contracted to transport a brick machine for them from Kansas City to Fort Scott, without delay, which he neglected and refused to do," but they do not allege or attempt to prove on the trial that the defendant at the time of making the contract had any knowledge of what the plaintiffs wanted to do with the machine or that they intended or expected to have any hired hands to run the machine, *Held*, that the court did not err in excluding all evidence tending to show that plaintiff had a large number of hands in their employ who were idle on account of not getting the machine at the time it should have been delivered.[a]

The facts of the case sufficiently appear in the opinion.

*M. V. Voss*, for plaintiff in error.

*A. Danford*, for defendant in error.

*For plaintiff*, it was insisted:

1. The objection to the evidence of Hoover in the

[a]1. DAMAGES.—A party is entitled to recover on the breach of such a contract such damages as are the natural, direct and proximate result of each breach, and such as may reasonably be supposed to have been in the contemplation of both parties thereto at the time of contracting: and in this case the measure of plaintiff's damage would be the value of the use of the machine, and the amount of the necessary cost of transportation as agreed upon, over the contract price.

2. ID: REMOTE.—Other and more remote damages can be recovered only when the proper foundation is laid therefor in the contract and in the pleadings.

3. EVIDENCE: SECONDARY.—To make secondary evidence of the contents of a written instrument competent, it must be shown that such instrument is destroyed or lost, or that a bona fide diligent search had been made therefor, where it was most likely to be found, and that it was unsuccessful.

deposition was made for the first time on the trial. This was not in time. It should have been made at the time of the taking of the deposition, and noted therein.

2. The reason for the rule is, that if the objection was made at the time of taking, and the ground then stated, the evidence of loss and diligence in search of the instrument could then be established and the objection thereby obviated; or the party being apprised of the objection, might make further effort to find the instrument itself, or further proof of its loss. *Goodrich v. Hanson*, 33 *Ill.*, 498; *Phy v. Clark*, 35 *id.*, 377; *Cook v. Orme*, 37 *id.*, 186; *Henry v. Chillis*, 4 *Greenl.*, 416; *Yost v. Debault*, 9 *Iowa*, 60; *Jones v. Smith*, 6 *id.*, 234; *Adams v. Folley*, 4 *id.*, 44, 64; *Wood v. Whitney*, 8 *N. Y.*, 442.

3. But the objection was not well taken. A sufficient degree of diligence in the search for the lost instrument was shown. 1 *Greenl. Ev.*, 558.

4. The terms of the contract are virtually admitted by the pleadings, leaving the only issue upon the question who had violated it and the amount of damages.

5. Special damages were plead in these words, viz : " That the plaintiffs were compelled to lay out of the use of the machine for the time of two months, and to pay a hand whom they had hired to use and run said machine the sum of one hundred and fifty dollars."

It is submitted that under this state of pleading, evidence of the special damages plead was competent. The money paid to the hired hand during the time before the arrival of the machine, after it was contracted to be delivered, was a direct loss and not remote. *See Waters v. Towers*, 20 *Eng. & E. L. R.*, 412, *overruling Hadley v. Baxendale*, 9 *Exchr.*, 341; *Schwarz v. Herren-*

*kim*, 26 *Ill.*, 205; *Laurent v. Vaughan*, 30 *Vt.; Wilson v. Lanc. & Yorksh. R. Co.*, 30 *L. J. C. P.*, (*N. S.*,) 232; *Sisson v. The Cleavel. & Tol. R. Co.*, 14 *Mich.*, 487; *Wibers v. N. Y. & E. R. Co.*, 19 *Barb.*, 36.

*Danford, for defendant in error*, maintained:

1. The court below did not err in excluding that portion of the deposition of A. T. Hoover giving contents of the written order of plaintiffs to defendant, as no proof was offered or introduced showing that " he had, in good faith, exhausted, in a reasonable degree, all the sources and means of discovery which the nature of the case would naturally suggest, and which were accessible to him." *See* 1 *Greenleaf on Evidence, p.* 558; *Civil Code*, § 366.

The court below did not err in not permitting, but excluding answers to questions tending to show damage sustained by plaintiffs, by reason of having a large number of hands employed in brick yard, etc., during defendant's absence at Kansas City for brick machine.

The petition contains no averment or allegation that defendant had any knowledge upon that subject, or the use the plaintiffs intended to make of the machine. 26 *Ill. R.*, 208; 1 *Chitty's P.*, 371.

The measure of damages in this case is the difference between the contract price and that for which plaintiffs could have got the machine transported by others, and no consequential damages can be recovered except those which may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. 26 *Law and Equity R.*, 398; 33 *Law and Eq. R.*, 187; *Sedgw. on Dam.*, 74, 75, 77, 78, 372, 373, 374, 375; 4 *Seldon*, (*N.*

*Y.,*) 340, 343; 16 *N. Y.*, 486; 28 *N. Y.*, 72, 76, 77; 33
*Vt.*, 92, 99; 6 *Cal.*, 19; 21 *Wendell*, 461; 24 *id.*, 809; 14
*Johns.*, 170; 10 *Watts*, 418.

*By the Court*, VALENTINE, J.

The plaintiffs in error, who were plaintiffs below, al-
leged in their petition in the court below, that the defen-
dant contracted to transport a brick machine for them,
from Kansas City to Fort Scott, without delay, which he
neglected and refused to do; but they did not allege in
their petition, nor attempt to prove on the trial, that the
defendant at the time of making the contract, had any
knowledge of what the plaintiffs wanted to do with the
machine, or that they intended or expected to have any
hired hands to run the machine. The court, at the trial,
excluded all evidence tending to show that the plaintiffs
had any hands in their employ, who were idle on account
of not getting the machine at the time it should have
been delivered. This, the plaintiffs' claim, was error.

The plaintiffs, also, at the trial introduced in evidence,
a deposition of a witness named A. T. Hoover. The
deposition was all read, except these words: "The order
is now so mislaid that I cannot find it. The substance of
the order was a direction to me to deliver to Mr. Math-
ews, the defendant, a brick machine, you have in store
for us, and let Mr. Mathews take the machine apart, and
to tell Mr. Mathews where Davis lived," which words
were, on motion of the defendant, excluded by the court;
and this the plaintiffs also claim was error.

DAMAGES:
Special.
These are the only errors complained of.
First, the plaintiffs complain that the court
erred in excluding the testimony first mentioned, because
it tended to prove facts, which would have materially en-

hanced their damages. They claim that they should recover as damages, the amount they paid their hired hands who were idle on account of not getting the machine at the time it should have been delivered. This kind of damages may in some cases be recovered. It is a question that always depends upon the pleadings and evidence and the circumstances in each particular case.

A party is always entitled to recover, on the breach of a contract, such damages as are the natural, direct, and proximate result of such breach; and he is also entitled to recover such other damages as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it; no other damages than these can be recovered.

The damages that the plaintiffs claim in this suit are not the natural, direct, or proximate result of the breach of this contract. The proximate cause of the plaintiff's loss was his own act—the hiring of the hands—and the hiring of hands was a collateral agreement between the plaintiffs and third parties, having no necessary connection whatever with the original contract, or the breach of it. It does not follow that because the plaintiffs' contracted for the delivery of a brick machine, that they must therefore necessarily employ hands to operate it. Suppose they were merchants, and bought the machine to sell again, must they then necessarily employ hands to run it?

In this case the natural, direct and proximate loss sustained by the plaintiffs was: First, the loss of the use of the machine, for the time that they necessarily lost the use thereof on account of the breach of the contract by the defendant. Secondly, the amount that it necessarily

cost the plaintiffs to have the machine delivered by others, over and above what it would have cost them under the contract price, had the defendant delivered it. All other damages are speculative and remote, and can only be recovered by laying the proper foundation for them at the time of making the contract. According to the petition and evidence in this case, the defendant did not at the time of making the contract, or even at any other time before the trial, known that the plaintiffs had, or intended to have, any hired hands for the purpose of running the machine, or for any other purpose. If the defendant had known at the time of making the contract that the plaintiffs intended to hire these hands, then he would have virtually authorized the same, and the plaintiffs could recover the damages they claim.

EVIDENCE: Secondary.    The next question involves really two questions: First, was the evidence of Hoover, stating that "The order is now so mislaid that I cannot find it,"—which was the only evidence upon the subject—sufficient evidence of the loss or destruction of the order, so as to allow secondary evidence of its contents? Second, if it was not, then did the defendant make the objection at the proper time?

We think there was not sufficient evidence of the loss or destruction of the order so as to allow any secondary evidence of its contents. The plaintiffs did not, in the language of Mr. Greenleaf [*Greenl. Ev.*, § 558], show that by themselves, or by any one else, they had made "A *bona fide* and diligent search, unsuccessfully, for it in the place where it was most likely to be found," nor that they "Had in good faith exhausted in a reasonable degree all the sources of information and means of discovery which the nature of the case would naturally suggest,

and which were accessible to them." Hoover does not state when or where he saw the order last; whether he had seen it since Mathews first brought it to him; whether Mathews delivered it to him, or to some one else, or took it away with him again, and if he, Hoover, took it, what he did with it, or where he put it. He does not state who mislaid the order, or when or where it was mislaid, or how he obtained his knowledge, or information that it was mislaid, or that he or any one else ever searched for it, or when or where any one ever searched for it. He states no facts upon which a court could find that a sufficient search had been made for it. He simply gives his own inference or opinion, without stating any of the facts upon which that inference or opinion is founded; whether it is founded upon hearsay evidence or upon facts within his own knowledge, or simply upon a guess.

As there was not sufficient evidence of the loss or destruction of the order, all parole or other secondary evidence of its contents, was clearly inadmissible.

TRIAL: OBJECTION to Evidence.　The next question is whether the objection to the evidence for incompetency was made at the proper time. This evidence was in the form of a deposition, and the plaintiffs claim that the objection should have been made at the time the deposition was taken, while in fact the objection was not made until the deposition was offered in evidence at the trial. Section 366 of the code (*Comp. Laws,* 184) reads as follows: "No exceptions; other than for incompetency or irrelevancy, shall be regarded, unless made and filed before the commencement of the trial." From this section, it is fairly inferable that the objection for incompetency and irrelevancy, may be made at any time during the trial, and

could not properly be made at any other time. "*Expressio unius est exclusio alterius.*"

What may be incompetent or irrelevant at one time during the trial, may be competent and relevant at another time. In the case at bar when the objection was made to this evidence for incompetency, if the plaintiff had introduced a witness or another deposition to show that the order had been destroyed, or that after sufficient search for it had been made it could not be found, then the evidence would have become competent, and the court could not legally have excluded it.

We have examined all the authorities referred to by counsel for the plaintiffs upon this point; 4 Greene, Iowa, 416; 4 Iowa, 44, 64; 6 Iowa, 229; 9 Iowa, 6; 33 Ill., 498; 35 Ill., 377; 37 Ill., 186; and we do not think that we overrule any one of them, unless it is the case of Cook v. Owen, (37 *Ill.*, 186.) While in that case, it seems that the objection must be made before going into trial, it also seems that *at any time* before or after the deposition has been taken and before the trial, is sufficient. The court says "This evidence was in depositions, and if the defendant below desired to take this objection, he should have done so *before going into trial.* The objection, if made in season, might have been removed by showing the loss of the latter, or by producing it. Statements in a deposition which are not legitimate evidence, like hearsay, may be objected to on the trial, but those which are objectionable merely because secondary evidence, should be *excepted to before the trial.* Corgon v. Anderson, 30 Ill., 95." But the case of Corgon v. Anderson, that the court here refers to, is not an authority upon this point, and does not sustain them. The court refers to no other authority, and gives no other reason for their decision. We do not know

what the statute of Illinois is upon this subject, but we
know that the foregoing decision is not good law under
our statute. If our statute had intended that this objec-
tion should be made before going into trial, and at any
time before, it would have said so in section 366 of the
code. There are decisions, which may not contravene
our statutes, but that are not applicable to this case,
which decide that objections to the competency of wit-
nesses on the ground of interest in the result of the suit,
or that the questions are leading, cannot for the first
time be made after the deposition has been returned to
court, but must be made when the deposition is being
taken, if the party be present; certainly the objection
that the questions are leading, does not fall under section
366, for evidence may be both competent and relevant,
and yet be obtained by means of leading questions.

EVIDENCE:
Witnesses.
There is also a well defined distinction between
incompetent evidence and the evidence of an
incompetent witness. The former is inherently incom-
petent, though it may come from a competent witness.
While the latter may be competent evidence, such as
might be proved by any competent witness, yet it comes
from an incompetent witness.

In either case it is probably necessary to make the
objection soon enough, so as to allow, the other party to
restore the competency of his evidence or of his witness,
otherwise the objecting party, if he be present, will be
deemed to have waived the objection.

It is within the power of a party at any time before the
deposition is taken, to restore the competency of his wit-
ness, who is incompetent on the ground of interest, by
procuring the proper release. Hence the necessity of
requiring that the objection for such incompetency be

made at the time the deposition is being taken, for if the competency of the witness is not then restored, the party taking it is forever powerless; that deposition can never be read in evidence; it is always the deposition of an incompetent witness.

It is different, however, with incompetent evidence, such as that of Hoover's, which simply needs some preliminary evidence to make it competent. In such case the party taking the evidence does not lose it by failing to make the deposition show its competency. He may make it competent at any time during the trial, by introducing the proper preliminary evidence, and then read from the deposition what would otherwise be incompetent evidence.

The question of the incompetency of witnesses, on the ground of interest, can seldom arise in this state, however, as witnesses are not disqualified for that reason alone.

We can find no error in this case, and the judgment of the court below must be affirmed.

All the justices concurring.