West Chicago St. R. R. Co. v. Luleich.

West Chicago St. R. R. Co. v. Hugo Luleich.

| 85 | 643 |
|---|---|
| d99 | ³ 5 |

1. FALSE IMPRISONMENT—*Probable Cause for an Arrest.*—The fact that a person has counterfeit coin in his possession, with intention to utter or pass the same, or to permit, cause or procure the same to be uttered or passed, with intention to defraud any person or body politic or corporate, knowing the same to be counterfeit, furnishes probable cause for his arrest.

2. MASTER AND SERVANT—*Arrests by Servants—Scope of Authority.*—It is not essential to the liability of the master that the servant should be authorized, either expressly or by implication, to do the very act for which the master is sought to be made liable.

3. SAME—*The Subject Illustrated.*—Where A, the owner of a wagon, employs B to drive it in his business, and while doing so B drives recklessly or carelessly, by reason whereof the wagon collides with another vehicle, injuring it and some of its occupants, A is liable, not because he authorized B to drive recklessly or carelessly, which he did not, but because B was acting within the general scope of his authority, which was to drive the wagon in his employer's business. Having authorized B to drive the wagon, he is as responsible for his negligent driving as if

he himself had been driving and guilty of the negligence which caused the accident. In legal contemplation, he acted by B.

4. STREET CAR COMPANIES—*Authority Over Passengers.*—A street car company, as a common carrier of passengers, has power to expel from its trains persons who are disorderly to the inconvenience and annoyance of other passengers, they refusing to desist from such disorderly conduct, and persons who refuse to pay their fare.

5. SAME—*Authority of Conductors.*—A street car company can only exercise its power over passengers by an agent, who is usually, if not uniformly, its conductor. It therefore authorizes the conductor to exercise such power, and in so doing he must act in accordance with his own judgment. If he removes a passenger from the car wrongfully, or in an unlawful manner, the company is responsible.

**Trespass,** for false imprisonment. Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 27, 1899.

VAN VECHTEN VEEDER, attorney for appellant.

Causing the arrest of a passenger is outside of the scope of a conductor's duty. Lafitte v. New Orleans C. & L. R. Co., 43 La. Ann. 34, 12 L. R. A. 337; Central R. R. Co. v. Brewer, 78 Md. 394, 27 L. R. A. 63; Little Rock T. & E. Co. v. Walker, 40 L. R. A. 473, 45 S.W. Rep. 57; Poulton v. London & S. W. Ry. Co., L. R., 2 Q. B. 534; Allen v. London & S. W. Ry., L. R., 6 Q. B. 65; Edwards v. London & N. W. Ry. Co., L. R., 5 C. P. 445; Charleston v. Tramways Co., 36 Weekly Rep. 367.

Authority of an agent to cause an arrest can not be implied. Dally v. Young, 3 Ill. App. 39, 41; Allen v. London & S. W. Ry. Co., L. R., 6 Q. B. 65, 69; Carter v. Howe Machine Co., 51 Md. 290; Springfield E. & T. Co. v. Green, 25 Ill. App. 106; Cleveland Co-op. Stove Co. v. Koch, 37 Ill. App. 595; Govaski v. Downey, 100 Mich. 429, 435; Murrey v. Kelso, 38 Pac. Rep. 879, 10 Wash. 47; Mali v. Lord, 39 N. Y. 381; Hershey v. O'Neill, 36 Fed. Rep. 168.

CHARLES LANE and B. F. IBACH, attorneys for appellee.

A common carrier undertakes absolutely to protect its passengers against the misconduct or negligence of its own servants, employed in executing the contract of transporta-

tion and while 'acting within the general scope of their employment. Steamboat Co. v. Brockett, 121 U. S. 637; Stewart v. R. R. Co., 90 N. Y. 588; Ry. Co. v. Flexman, 103 Ill. 546.

It is not necessary that the particular act of the servant complained of be expressly authorized or ratified by the master. It is enough that at the time of committing the wrong the servant was engaged in the performance of the master's business, and was acting within the general or apparent scope of his employment. Chicago City Ry. Co. v. McMahon, 103 Ill. 485; Ry. Co. v. West, 125 Ill. 320; Ry. Co. v. King, 77 Ill. App. 581; Hanson v. Ry. Co., 75 Ill. App. 474; Craker v. Ry. Co., 36 Wis. 657; Eichengreen v. Ry. Co., 96 Tenn. 229; Rounds v. Ry. Co., 64 N. Y. 129 (134); Camp v. Hall, 39 Fla. 535.

A common carrier is liable for the act of its conductor in causing the arrest of a passenger while in the performance of his duties as a conductor. Palmeri v. The Manhattan Ry. Co., 133 N. Y. 261; Mulligan v. Ry. Co., 129 N. Y. 506; Gillingham v. Ry. Co., 35 W. Va. 588; Ry. Co. v. Henry, 55 Kans. 715; Hamel v. Ferry Co., 25 N. Y. St. Rep. 153; Hamel v. Ferry Co., 125 N. Y. 707; Eichengreen v. Ry. Co., 96 Tenn. 229.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for $800 in an action of trespass for false imprisonment.

The uncontroverted facts are as follows: The appellee, who was a resident of Hammond, Indiana, was in the city of Chicago on Sunday, December 6, 1896, and, between seven and eight o'clock in the afternoon of that day, boarded a grip car of appellant, which was operated by cable. The front part of the grip car was unenclosed, the rear part enclosed. Appellee got on the open part of the car, near to the gripman, and the conductor of the car shortly thereafter came from the enclosed part of the car and demanded from appellee his fare, when appellee gave to the conductor a coin of the denomination of one dollar,

and the conductor gave to appellee ninety-five cents in change. Within a few minutes thereafter appellee went into the enclosed part of the car, and shortly afterward the conductor approached him and told him that he had given to him, the conductor, a bad or counterfeit dollar, and produced and exhibited to appellee a dollar which he said was the one he had received from him. The latter denied that the dollar shown to him was the one which he had given to the conductor, and insisted that the dollar which he had given to him was a good one. Upon appellee's refusal to take back the dollar or return the ninety-five cents which had been given him in change, the conductor told him that he would have him arrested. The car was proceeding on its way during the controversy between the conductor and appellee, and the conductor, seeing a policeman, called him to the car, told him that appellee had passed a counterfeit dollar on him, gave the dollar to the policeman, and pointed out appellee to him and told him, the policeman, to lock appellee up. The policeman then took appellee by the arm and told him he would have to go with him. Appellee, not resisting, walked with the officer to the police station, where the officer searched him and found ninety-five cents in one of his pockets and sixty-five cents in another. Between eight and nine o'clock P. M. of that evening, appellee was locked up in a cell about twelve feet by fifteen feet in size, and kept there until the next morning, Monday morning, when he was taken before a justice and his bail fixed at $1,000, in default of giving which, he was ordered to be committed to jail. He was not so committed, however, but was returned to the same cell and kept there until the next Wednesday morning, when he was taken before the justice and discharged. Appellee's diet, when confined as stated, consisted of biscuit and black coffee for breakfast and supper, and the same for dinner with corned beef added. His bed was a wooden plank about fifteen feet long by eight inches wide.

Thus far there is no conflict in the evidence; but there is a conflict in the evidence as to whether the dollar given by

appellee to the conductor was genuine or counterfeit, and also as to the manner of appellee's discharge. Appellee's account of the manner of his discharge is as follows:

" Q.   On Wednesday morning what was done with you ? A.   They took me up in front of the judge again.

Q.   And what was done with you then, after you were before the judge ?   A.   There was some gentleman there examined me.

Q.   Well, tell to the jury what they did.   A.   He examined my hands and asked me where I was working.

Q.   After that, what was done with you ?   A.   That very same gentleman went up and spoke to the judge; what he said, I don't know, but there was a police officer there.   He told me to go.   He never asked me anything at all.

Q.   Then, what did you do, Hugo ?   A.   I left; I left the station."

What purports to be a transcript of the proceedings before Justice Severson was put in evidence, certified thus:

" I certify that this transcript contains a full statement of all the proceedings before me in the above entitled case.

OLAF F. SEVERSON,   [SEAL.]
Justice of the Peace."

This document contains, among other things, the following:

" December 9, 1896.   Case called for trial.   Plaintiff and defendant in court.   Plaintiff and defendant sworn and examined.   Witnesses sworn and examined.   After hearing all the evidence in the said cause, the court enters a *nolle pros.*

Witnesses:

WILLIAM ANDREWS, 1552 Milwaukee Avenue.
OFFICER SINGEON, 32nd Precinct Police Station."

Olaf F. Severson, the justice, called as a witness, testified that the signature to the certificate was his; that the document was taken from the record book, but that the record was not kept by him; that he had no supervision over the person who did keep it, and that he had no knowledge of its accuracy.   The witness also testified that the proceedings against appellee occurred before him.   This, taken in connection with the fact that he did not keep the

alleged record himself, had no supervision over the person who kept it, and, consequently, had no knowledge of its accuracy, would seem to make his certificate of but little, if any, weight. H. T. Keats, who was clerk for Justice Severson when the preceedings against appellee were had, testified that the record shown him, and from which the document certified by Severson was copied, was the criminal docket kept at the West Chicago Avenue Police Court, and was in his handwriting, and that he took it from the police sheet turned in every morning.

The transcript and the evidence of appellee both show that he was discharged. If there was no proper record kept, then it was clearly competent to prove by oral evidence appellee's discharge. It is a legitimate inference from appellee's discharge that the dollar which he gave to the conductor was genuine, and this, whether he was discharged on a full hearing, as appears by the transcript, or for want of prosecution, as appears from his evidence. The dollar was delivered by Andrews, the conductor, to the officer when the latter arrested appellee. It was the duty of the officer to preserve the dollar and produce it at the hearing, and the legal presumption is he performed this duty. Andrews, the conductor, appeared as a witness, according to the transcript; there had been ample time between December 6th, when the arrest was made, and December 9th, when appellee was taken before the justice for examination, to ascertain beyond peradventure whether the dollar was genuine, and to procure witnesses as to its genuineness or the contrary. If it was produced at the examination, and was counterfeit, it was the duty of the justice (and the legal presumption is that he did his duty) to hold appellee to bail, but he discharged him. On the other hand, if appellee was discharged without examination, as he testifies, it is a legitimate inference that Andrews, the conductor, had ascertained that the dollar was genuine, and therefore declined to prosecute. In this connection it is signficant that Andrews, who was a witness for appellant, did not testify that the dollar was counterfeit. His testi-

mony, as abstracted, is as follows: "He gave me a dollar; the dollar did not look right; the lamp in the front end of the car was rather smoky and dim, and the dollar did not feel just right. I gave him his change—ninety-five cents —before I had noticed it much; I told him then, at that time, that I did not think the dollar was good." Again: "I said to him, 'You have given me a bad dollar.'" Nowhere in his evidence did this witness testify that the dollar was, in fact, bad. Andrews testified: "I reported this case to the company at the time. We have our reports to make out during the day." Now, the case having been reported to appellant, and the dollar in question having been turned over to the policeman, and the vital question being whether it was counterfeit or genuine, and a suit for damages, in the event that it was genuine, being, to say the least, not improbable, it would seem that if the dollar was counterfeit, appellant, as a precautionary measure, would have seen to its preservation, so that it might have been produced as evidence in any suit which might be brought against it by appellee. Yet it was not produced, and the last we hear of it is that it was delivered by Andrews to the policeman. Appellee testified that he received the dollar in question from his brother in Hammond, Indiana, the Saturday night before his arrest, and that it was the only dollar in his possession when he gave it to the conductor. The latter statement is corroborated by the policeman, who says that, on searching him, he found only small change on his person. Otto Luleich, appellee's brother, testified that on Saturday night he gave appellee a dollar, and that it was a good silver dollar. Andrews and Singeon, the police officer, were the only witnesses for appellant who were questioned in relation to the genuineness or otherwise of the dollar, and the latter testified that he found it was soft and thought it was lead.

There was no direct or positive evidence that the coin was counterfeit.

Appellee was arrested without a warrant, and without complaint having been made other than the verbal state-

ment made by Andrews to police officer Singeon. Maher, clerk of the Police Court at the station where appellee was confined, and where he was brought up for examination, testified that he had searched all the files and records where such papers were kept, and had been unable to find any complaint against appellee. The transcript contains this recital: "Defendant arrested while committing crime of violating Section 112, Chapter 38 of the Revised Statutes of Illinois, by police officer Ed. Singeon. Written complaint filed by William Andrews."

Section 112 is as follows:

"Every person who shall have in his possession, or receive for any other person, any counterfeit gold or silver coin or coins of the species current by law or usage in this State, with intention to utter or pass the same, or to permit, cause or procure the same to be uttered or passed, with intention to defraud any person or body politic or corporate, knowing the same to be counterfeit, shall be imprisoned in the penitentiary not less than one nor more than fourteen years."

The court instructed the jury, in substance, that if there was probable cause for the arrest of appellee, they should find appellant not guilty. If the dollar was counterfeit, then certainly there was probable cause for the arrest. The jury, by their verdict of guilty, found that there was not probable cause for the arrest, which finding necessarily included the finding, not only that the coin was genuine, but that there was no reasonable ground of suspicion that it was counterfeit. We are of opinion that this finding is warranted by the evidence. If the coin was genuine, then appellee paid his fare and was a passenger and entitled to protection as such.

The chief contention of appellant's counsel is, that the causing the arrest was outside the scope of the conductor's duty, and he argues that authority to cause the arrest can not be implied. We think appellant's counsel misconceives the sense in which the words *within the scope of his authority* are used in his text books and judicial opinions. It is not essential to the liability of the master, as counsel

assumes, that the servant should be authorized, either expressly or by implication, to do the very act for which the master is sought to be made liable.   Take a familiar instance :   A, the owner of a wagon, employs B to drive the wagon in A's business.   B, while so doing, drives recklessly or carelessly, by reason whereof the wagon collides with another vehicle, injuring it and some of its occupants. A is liable, not because he authorized B to drive recklessly or carelessly, which he did not, but because B was acting within the general scope of his authority, which was to drive the wagon in his employer's business.   Having authorized B to drive the wagon, he is as responsible for his negligent driving as if he himself had been driving and guilty of the negligence which caused the accident.   In legal contemplation, he acted by B.

Appellant, as a common carrier of passengers, has power to expel from its trains persons who are disorderly to the inconvenience and annoyance of other passengers, they refusing to desist from such disorderly conduct, and persons who refuse to pay their fare.   Booth on Street Railways, Sec. 369; C., B. & Q. R. R. Co. v. Griffin, 68 Ill. 499; Chicago City Ry. Co. v. Pelletier, 134 Ib. 120.

Appellant, being a corporation, can only exercise this power by an agent, who is usually, if not uniformly, its conductor.   It therefore authorizes the conductor to exercise the power.   Necessarily the conductor, in exercising the power, must act in accordance with his own judgment.   If he removes a passenger from the car wrongfully, or in an unlawful manner, appellant is responsible, because the conductor, in so removing the person, is acting within the general scope of his authority, which is to exercise the power of removal.   In legal contemplation, the corporation is present and acting in the person of its conductor.   We are not left, however, to decide the question as if it were wholly unadjudicated, and, therefore, of first impression.   The views here expressed are sanctioned by numerous authorities, among which are the following;   Booth on Street Railways, Sec. 373; Morawetz on Priv. Corp., 2d Ed., Sec.

726; Newell on Malicious Prosecution, Sec. 102; Hoffman v. N. Y. Cen. R. R. Co., 87 N. Y. 25; Lynch v. Met. El. Ry. Co., 90 Ib. 77; Palmeri v. Manhattan Ry. Co., 133 Ib. 261; Krulevitz v. Eastern R. R. Co., 143 Mass. 228; A. T. & S. F. R. R. Co. v. Henry, 55 Kan. 715.

The last four cases cited *supra*, are cases of false arrest by servants of the corporations named, and are analogous to the case at bar.

In C. & E. R. R. Co. v. Flexman, 103 Ill. 546, it appeared that Flexman, while a passenger on the railroad company's train, lost his watch. A fellow passenger asked him who he thought had his watch, in response to which question Flexman pointed to the brakeman, saying, " that fellow," whereupon the brakeman struck him in the face with a railroad lantern. The court held the railroad company liable, saying, among other things, " The contract which existed between appellant, as a common carrier, and appellee, as a passenger, was a guaranty on behalf of the carrier that appellee should be protected against personal injury from the agents or servants of appellant in charge of the train." The doctrine thus announced is well sustained by the authorities.

Appellant's counsel now makes the specific objection that the evidence as to the manner in which appellee was fed, while imprisoned, was erroneously admitted, for the reason that it is not alleged in the declaration that he was improperly or insufficiently fed. Had this specific objection been made in the trial court, appellee might have amended his declaration or withdrawn the evidence; it was not, but only a general objection, which was insufficient; and the specific objection comes too late. Espen v. Hinchliffe, 131 Ill. 468.

No other objection relating to evidence is relied on in the argument of appellant's counsel. The only objection made by counsel to the instructions of the court, is to the following language in appellee's first instruction:

" Such arrest can only be justified by the defendant in the suit by proving the actual guilt of the plaintiff, or that the conductor had probable cause for such arrest."

The objection made is that the language quoted " took from the jury all consideration of the main point of the defense, that the conductor, in causing the arrest, was acting as a private individual, and not as an agent or servant of the company." We think the objection untenable. It was proved that Andrews was the conductor; as such he was exercising the power of appellant in removing appellee from the car; in his private capacity, as an individual, he could not have exercised that power, and there is nothing in the evidence which would have warranted the court in submitting to the jury the question as to whether the conductor was acting in his private capacity, as an individual. In causing appellee's removal from the car, he was acting in his capacity as conductor, and in the exercise of his power as such, and appellant, by whose authority he exercised the power, is liable for the consequences of the unlawful manner in which it was exercised.

The objection that the damages are excessive, can not be sustained. The trial was, so far as appears from the record, fair and impartial, and the amount awarded as damages is not such as to warrant the inference that the jury was influenced by passion, prejudice or partiality.

The judgment will be affirmed.