### Theresie Vrchotka v. A. M. Rothschild et al.

1. EMPLOYER AND EMPLOYE—*Liability of the Employer for Illegal Arrests by His Employes.*—The fact that the employes of a mercantile establishment acting in behalf of their employer, and in the line of their employment, arrest a party in front of the establishment, charge her with theft and take her inside, where a search is directed and carried on by persons employed therein, makes a *prima facie* case of false imprisonment against the proprietor, sufficient to be submitted to a jury.

2. AGENCY—*Scope of an Agent's Authority May be Shown by Circumstances.*—The scope of an agent's authority may be shown by circumstances as well as by express proof. Whatever is fairly implied from such circumstances is within its scope.

Trespass, for false imprisonment. Error to the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Reversed and remanded. Opinion filed February 21, 1902.

JONES & LUSK, attorneys for plaintiff in error.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for defendants in error.

Vrchotka v. Rothschild.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is a suit for false imprisonment. At the close of the plaintiff's case the court instructed the jury to find the defendants not guilty. From the judgment rendered in favor of the defendants this appeal is prosecuted.

The facts upon which the action is based are substantially as follows: The plaintiff, a midwife by occupation, a married woman of Bohemian birth, speaking Bohemian and German, but very little English, about noon of July 15, 1898, went to "Rothschild's" with the intention of there making a purchase. Before entering the store she and a lady of her acquaintance whom she had met upon the elevated railroad on her way down town stopped at a window "in front of Rothschild's store," and while they were standing there looking in, the plaintiff testifies that "a young lady or miss came up to me and lifted up my cape and reached underneath." Plaintiff, not understanding English, asked the lady with her what this young woman was about, and was told that the young woman charged her with having stolen something. A crowd gathering, the plaintiff and the young woman went into the store, and there a man whom plaintiff says was a clerk, took plaintiff by the arm and led her into the basement, where her clothing was searched. Plaintiff, while this was going on, asked for some one who could speak German, and a young woman was sent for and came down stairs in a few minutes. She was "undressed, like the other girls," as plaintiff states, referring apparently to the absence of out-door costume, such as hat or cloak. Plaintiff was charged with stealing ribbon, and says that the woman who first accused her on the sidewalk went up from the basement and coming back with a brown ribbon, told plaintiff that if she would say she had stolen it, she, the young woman, would let her go. It is claimed that the clerks tried to get some sort of admission from plaintiff to sustain their suspicions, and offered to sell her the ribbon for $3.00. Plaintiff was then taken in charge by "a tall man," and led to the police station, the

"tall man" telling her on the way that he would let her go if she would say she "had stole it." Plaintiff was locked up at the police station from about half past one until about 5 P. M., when she was bailed out. She was tried ten days thereafter.

The only question we need consider is whether the court erred, as claimed by plaintiff, in directing a verdict for the defendants in view of this evidence. It is claimed by defendants' counsel, first, that there is no evidence in the record that the arrest and imprisonment were made or caused by the defendants. There certainly was evidence tending to show that these things were brought about by employes of the defendants. It was for the jury to determine whether the evidence showed the detention and search transpired at the defendants' store. The evidence is that plaintiff was looking into the window of "Rothschild's store," when accused of the theft, and that she and her accuser went into the store, where the searching, etc., occurred. This is *prima facie* proof that it was defendants' store, and the evidence certainly tends to show that the arrest and search of the plaintiff were directed and carried on by persons employed in that store. There is also, in our opinion, *prima facie* evidence tending to show not only that these persons were defendants' employes, but also that they were acting in behalf of the employers, and in the line of their employment. They were, according to the showing made by this testimony, endeavoring to recover back the employer's property, from one whom they suspected of taking it. It was in the line of duty for them to protect the employer's property entrusted to their charge. We are unable to agree at all with the contention of defendants' counsel that the evidence is insufficient to make out a *prima facie* case upon these points in favor of the plaintiff, and that is all that was necessary to entitle her to have the evidence submitted to the jury.

In the case of Staples v. Schmid, 18 Rhode Island, 224–231, will be found a discussion of questions here involved. In that case the servant's ordinary duties were, it is said, "to show goods and to sell them to customers. It was, however,

equally his duty to protect his master's property from pilfering. The acts complained of were evidently done with that intention. The arrest was for the purpose of searching for and recovering the master's property, not with the object of punishing crime against the public. * * * The servant here was salesman and custodian in one. Whatever the master might do in the protection of his property he expected his servant to do in his absence. * * * If in the performance of this duty he mistook the occasion for it, or exceeded his powers, or employed an improper degree of compulsion, the mistake and excess must be answered for by the master."

It is apparently contended that it was necessary to prove conclusively that these employes were the agents of the defendants for the purpose of making the arrest. But this is one of the questions of fact to be determined by the jury from the evidence submitted, and in the absence of any denial whatever that they had authority from the employer, their conduct in connection with the circumstances is evidence for the jury to consider in determining whether the alleged employes were acting in the line of their employment. We notice that the plaintiff's attorney offered to show that at the trial of the plaintiff on the charge of stealing, a witness for the prosecution testified that she was the person who arrested the plaintiff, and "that she was a detective for the Rothschilds." This evidence was objected to and not admitted. It would not conclude the defendants, doubtless, but as the statement sought to be proven was alleged to have been made under oath upon a trial of the charge upon which the arrest was made, we regard it as admissible as a part of the *res gestae*. It occurred during the progress of the transaction which is the ground of the plaintiff's suit. But aside from this rejected evidence, we are of opinion that a *prima facie* case was made out. It was for the jury to decide whether this transaction, occurring as it did, was without the knowledge and assent of the defendants or their authorized and responsible agents acting within the scope of their employment. The scope of an agent's authority may be shown by circumstances as well

as by express proof. Whatever is fairly implied by the authority given is within its scope. Springfield E. & T. Co. v. Green, 25 Ill. App. 106–110.

It is urged that the count for false imprisonment alleges the trespasses to have been committed by the defendants in person, while the evidence shows them to have been committed by others, and that this is a fatal variance. It is only necessary to say that what one does by another is his own act, and if the proof shows the acts in question to have been done by agents duly authorized within the line of their employment it suffices. While the servant is engaged in the business of the master he " is supposed to be acting under and in conformity to his directions." (Scammon v. Chicago, 25 Ill. 424.) And there being evidence, as we have said, tending to show that the persons doing the acts complained of were servants of the defendants and engaged in the business of the defendants at the time, apparently with the design of protecting defendants' property, acting without hesitation, as if in pursuance of established practice, the burden of disproving the authority was transferred to the defendants. It is said in Wood on Master and Servant, Sec. 322, that " the jury may infer authority on the part of the servant from his employment and its incidents, and that no proof other than that is necessary if the act complained of comes within the scope of such apparent power."

For the reasons indicated the judgment of the Superior Court must be reversed and the cause remanded.