J. Frank King, Plaintiff in Error, v. Automobile
Bonding Company, Defendant in Error.

Gen. No. 38,172.

Opinion filed December 27, 1935.   Rehearing denied January
7, 1936.

ALDEN, LATHAM & YOUNG, of Chicago, for plaintiff
in error.

ROTHBART, PETERSON & ROSENFIELD, of Chicago, for
defendant in error.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion
of the court.
This is a writ of error prosecuted to reverse a judg-
ment of the superior court in favor of the defendant
Automobile Bonding Company and against the plain-

tiff J. Frank King, for costs. The suit was brought originally against two defendants, Automobile Bonding Company, a corporation, and Samuel A. Segall. At the close of plaintiff's case the court instructed the jury to find the Automobile Bonding Company not guilty.

The amended declaration contained two counts. The first count set forth a cause of action for malicious prosecution, and the second count for false imprisonment. Defendant filed a plea of the general issue to the amended declaration and at the close of plaintiff's case the second count of the amended declaration was withdrawn by agreement of the parties.

Plaintiff's theory of the case is that Samuel Segall was the duly authorized agent of the defendant and was acting within the scope of his employment at the time he caused plaintiff to be arrested, which constituted the basis of this suit; that Segall thereby rendered defendant, Automobile Bonding Company, liable to respond in damages to the said J. Frank King because of Segall's said acts.

On the other hand defendant contends that plaintiff failed to show that Segall was the agent of the defendant Automobile Bonding Company at the time of the acts complained of and that whatever acts he performed were not within the scope of his express or implied authority so as to render defendant, Automobile Bonding Company, liable.

The cause was tried before a court and jury and, at the conclusion of the plaintiff's evidence, the court instructed the jury to find the defendant Automobile Bonding Company not guilty.

From the abstract before us it appears that the plaintiff was the owner of an automobile and that he borrowed $300 from the defendant, Automobile Bonding Company, who was in the automobile loaning business and as security gave a mortgage on said car; that

thereafter the plaintiff in driving the automobile had an accident which damaged the said automobile and the same was taken to a repair shop in Aurora, Illinois, to be repaired. The cost of repair was $100. The said defendant, Automobile Bonding Company, had employed the codefendant Segall to reclaim automobiles and he obtained from his employer the mortgage and notes made by King and found out where the automobile was and how it got into the Aurora repair shop and notified the credit manager who instructed Segall to get a writ of replevin; thereafter the said Segall, as agent for the Automobile Bonding Company, sued out a writ of replevin, but did not obtain the automobile until a settlement was made with the repairman in Aurora; that thereafter the said Segall went before a justice of the peace in Kane county and swore out a warrant charging the plaintiff with concealing the automobile and disposing of the automobile without the consent of the mortgagee in violation of the statute; that he had the plaintiff arrested and put in jail in Chicago where he remained for an hour or two until he was taken to Aurora, Illinois, and obtained a bond in the sum of $1,000; that thereafter a hearing was had before a justice of the peace who held plaintiff to the circuit court of Kane county to await the action of the grand jury. The record shows that nothing was done by the grand jury to return either a true bill or a no bill up to the time of the trial.

The testimony on behalf of the plaintiff further shows that Segall was employed by the defendant company in repossessing automobiles and collecting money, and adjusting loans.

The question for review in this court is whether or not the trial court was justified in instructing the jury to find for the defendant, Automobile Bonding Company, at the conclusion of plaintiff's evidence.

In the case of *Glenn v. Lawrence,* 280 Ill. 581, at page 585, the court said:

"The facts which will sustain an action for malicious prosecution are (1) the commencement or continuance of an original, criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff."

The first of these propositions has been proven by the commencement of the suit before the justice of the peace in Kane county who, after a hearing, held the plaintiff herein to await the action of the grand jury of Kane county under a bond of $1,000.

The second proposition as to whether the legal causation by the present defendant, Automobile Bonding Company, against the plaintiff, who was the defendant in the original proceeding, is one of the main questions in the case. .

The proof and circumstances in evidence tend to show that Segall was engaged by the Automobile Bonding Company to repossess automobiles and make collections of money; that he worked on a commission basis and was paid only if he obtained the automobile or collected the money and that he also had power to adjust loans. When Segall learned that King's automobile was in the possession of a repairman at Aurora, he called up the office of the defendant and talked with one Kerwin, the creditman, who advised him to obtain a lawyer in Aurora and to "get a writ." As a result of this advice, he went to see a lawyer, a Mr. Stephens, and took out a writ of replevin, placed it in the hands of a constable and went to the garage, but the automobile was not there. Thereafter said Segall swore out

a warrant before a justice of the peace as heretofore stated. The State's attorney of Kane county did not present the matter before the grand jury and no further action was taken.

The evidence offered by the plaintiff in support of his contention that Segall was the agent of the Automobile Bonding Company in taking out the warrant charging plaintiff with violation of the law in concealing the automobile is substantiated by Segall's own testimony, where upon cross-examination he said:

"As soon as the mortgage came into my possession, I started to apprehend Mr. King." On direct examination in answer to questions propounded to him he admitted that he had an arrangement with the Automobile Bonding Company on this mortgage; that in the event he collected the money he was to receive a certain percentage. He further stated on cross-examination, when referring to the amount that would be required to take the car out of the garage at Aurora:

"I immediately got in touch with the collection department of the Automobile Bonding Company by telephone in their office. I talked to Joe Kerwin. I believe Mr. Kerwin said to me at that time that $100.00 was too much money and then he asked me where I was and the phone number, which I gave him, and he said to stay there and he would get in touch with our attorney and then I will call you back. He did call me back. He said, 'I just got in touch with our attorney and his advice was to go up and see Samuel Stephens, a lawyer in Aurora, and get a writ. . . .'"

The evidence further shows that the affidavit for replevin reads as follows:

"State of Illinois, ⎱ ss.
　County of Kane ⎰

"Samuel A. Segall being duly sworn, deposes and says that he is the agent of Automobile Bonding Company, a corporation..............................

the owner and now lawfully entitled to the possession of the following Goods and·Chattels, viz.: etc.''

The replevin bond which was given was signed, ''Automobile Bonding Co. Per S. A. Segall.''

At the time of the hearing before the justice of the peace on the criminal charge, Mr. Stephens, the lawyer, for the Automobile Bonding Company was present and took part in the examination.

Was there sufficient evidence adduced by the plaintiff which, with the inferences to be drawn therefrom entitled the plaintiff to have the cause submitted to the jury?

In the case of *Field v. Kane,* 99 Ill. App. 1, the court said:

''In determining the liability of the principal for a wrongful arrest by his agent, the criterion is, was the act within the general scope of the implied authority conferred upon the agent. If so, the wrongful exercise of it, though not expressly directed by or contemplated by the principal, will render him liable.''

In the *Field* case, the court in quoting from the case of *Arasmith v. Temple,* 11 Ill. App. 39, said:

''That a master is liable for a trespass committed by his servant *bona fide* as such and in the line of his employment, although wilful on the part of the servant, has been often declared by the Supreme Court of this State. . . .'' Citing *West Chicago St. Ry. Co. v. Luleich,* 85 Ill. App. 643.

In the case of *West Chicago St. Ry. Co. v. Luleich, supra,* the court said:

''The chief contention of appellant's counsel is, that the causing the arrest was outside of the scope of the conductor's duty, and he argues that authority to cause the arrest cannot be implied. We think appellant's counsel misconceives the sense in which the words *within the scope of his authority* are used in the text books and judicial opinions. It is not essential to the

liability of the master, as counsel assumes, that the servant should be authorized, either expressly or by implication, to do the very act for which the master is sought to be made liable.''

In Wood on Master and Servant, sec. 285, the author says:

''There is an implied authority to do all those things that are *necessary* for the protection of the property intrusted to the person.''

In the case of *Vrchotka v. A. M. Rothschild,* 100 Ill. App. 268, the court said:

''The fact that the employes of a mercantile establishment acting in behalf of their employer, and in the line of their employment, arrest a party in front of the establishment, charge her with theft and take her inside, where a search is directed and carried on by persons employed therein, makes a *prima facie* case of false imprisonment against the proprietor, sufficient to be submitted to a jury.''

In the instant case Segall was given a mortgage and notes by the defendant, Automobile Bonding Company, to collect from the plaintiff King or repossess the automobile upon which there was a mortgage securing the notes, which were the property of the defendant. In pursuance with the instructions and his employment he sought out King and after some time located him and found that the car had been wrecked and placed in a garage for repairs in Aurora, Illinois. He then called up and talked with the creditman of the defendant, one Kerwin, who told him to get a lawyer in Aurora by the name of Samuel Stephens and get a writ. In pursuance of this an affidavit for a writ of replevin was made by Segall, in which he swore that he was the agent for the Automobile Bonding Company. He gave the replevin bond required by statute and signed the name of the Automobile Bonding Company by S. A. Segall. While in pursuit of the property

Segall swore to a warrant charging the plaintiff King with crime. When the case came up before the justice of the peace, Stephens, the lawyer whom he hired in Aurora, for the Automobile Bonding Company was present before the justice of the peace questioning the witnesses. Prior to this King had asked Segall to readjust the loan so that he could pay $25 a month instead of $50 a month, as the notes provided. Segall sent King to one Russell in charge of the office of the Automobile Bonding Company, who after talking with King referred him back to Segall, thereby implying that Segall had the power of adjusting this loan. All of this was done while he was in pursuit of the business of the Automobile Bonding Company in search of their property.

For whom was he performing all this service? Apparently not for himself. Whether he had authority, either express or implied, to do what he did was a question of fact which should have been submitted to the jury. Authority can be implied from the circumstances, as well as from direction by the principal.

A peremptory instruction should not be given where there is any evidence, with all the inferences that the jury may justifiably draw therefrom, which fairly tends to prove the cause of action set out in the declaration.

Counsel for the defendant has cited many cases which they construed as supporting the court's position in giving the directed verdict. These cases, however, we do not think are determinative of the question involved here.

Inasmuch as this case must be tried again, we do not deem it necessary to pass on the other points raised in the briefs.

We think the court erred in instructing the jury at the close of plaintiff's evidence to find the defendant not guilty. Consequently, for that reason and other

reasons herein given, the judgment is reversed and the cause remanded for a new trial not inconsistent with the views herein expressed.

*Judgment reversed and cause remanded.*

HALL, P. J., and HEBEL, J., concur.