The Atchison, Topeka & Santa Fe Railroad Company v. W. T. Henry.

1. Carrier —*Assault on Passenger —Liability.* The contract of a common carrier with a passenger requires the carrier to protect the passenger against interference or injury arising from the negligence or willful misconduct of its servants while engaged in performing the duties which the carrier owes to the passenger ; and, where a passenger upon a railroad train is unjustifiably assaulted and beaten by an employee who owed him the duty of protection, the railroad company is responsible for his acts and liable for the injury suffered.

2. ———— *Illegal Arrest of Passenger.* A railroad company which is carrying passengers is liable for an illegal arrest and the false imprisonment of a passenger caused to be made by the conductor in charge of the train on which the passenger was riding, while acting in the line of his employment.

3. ———— *Excessive Damages.* The testimony examined, and it

is *held* that the damages awarded are not so excessive as to warrant the, disturbance of the verdict.[*]

*Error from Sumner District Court.*

W. T. HENRY brought an action against *The Atchison, Topeka & Santa Fe Railroad Company* to recover damages for injuries sustained by him on account of the alleged wrongdoing of the company, and in his petition alleged that on January 9, 1890, he boarded a train of the railroad company at Kansas City, Mo., for the purpose of riding over the Southern Kansas division of that railroad to Wellington, Kas. ; that he was provided with a ticket or stock-contract entitling him to ride over the road between the points. named, and that the conductor in charge of the train refused to accept his ticket or stock-contract, and required him to pay in cash the sum of $7.50 for his transportation to Wellington. In the second count of his petition he alleged that, while he was riding as a passenger and deporting himself in a proper and orderly manner, the agents and servants of the company, in the pretended exercise of authority to preserve order on the train, wrongfully and wantonly assaulted him by striking him on the head and body several times, with great force and violence, with a heavy lantern, thereby causing him to suffer great injury in body and mind. In the third count it is alleged that, while he was conducting himself in a quiet and proper manner, the defendant, by its agents and servants, in the pretended exercise of authority and to preserve

---

[*] NOTE.—For carrier's liability to a passenger for an assault upon him, see note to *Davis v. Houghtelin*, 14 L. R. A. (Neb.) 737; also, the late case of *B. & O. Rld. Co. v. Barger*, 26 L. R. A. (Md.) 220.

As to liability for false imprisonment of a passenger, see note to *Mulligan v. N. Y. & R. B. Rld. Co.*, 14 L. R. A. (N. Y.) 791; also, *Gillingham v. O. R. Rld. Co.*, 14 L. R. A. (W. Va.) 798; *Palmeri v. Manhattan Rld. Co.*, 16 L. R. A. (N. Y.) 136; *Central Rld. Co. v. Brewer*, 27 L. R. A. (Md.) 63; 29 L. R. A. 465.

Statement of the Case.

order in and about the train at Ottawa, did arrest him, without any warrant or authority of law, and did forcibly remove him to the common jail of the county, where he was detained for 12 hours without any reasonable or probable cause, by reason of which he suffered great physical injuries, and that he was also greatly humiliated and injured in his circumstances and credit. For all these things he prayed damages in the sum of $10,000. The answer of the defendant was a general denial. Henry finally withdrew any claim for the amount he paid out for railroad fare from Kansas City to Wellington, and the case was finally submitted upon the claims in the second and third counts of the petition. In answer to special interrogatories which were submitted, the following findings of fact were made:

"1. On what train of cars did plaintiff take passage from Kansas City, Mo., on the 9th day of January, 1890, and over what road did the same run? Ans. On Santa Fe train, on Santa Fe road, Southern Kansas division.

"2. In what car on said train did plaintiff first take passage? A. Smoking-car.

"3. How long did he remain in such car in interrogatory No. 2 mentioned before going into the ladies' car? A. A very short time; say a few minutes.

"4. Did plaintiff go to sleep soon after taking a seat in the ladies' car? A. He did.

"5. If you answer interrogatory No. 4 'Yes,' state whether he remained asleep until the conductor waked him up to collect his fare? A. According to evidence; yes.

"6. How many times did the conductor wake the plaintiff up and state to him in regard to producing his ticket or paying his fare before plaintiff paid the same? A. Either two or three times; asked him for his ticket three times.

"7. What was the name of the conductor on the train January 9, 1890? A. Eli Parsons. *

"8. Upon the payment of plaintiff's fare, did the conductor give him a receipt therefor? A. Yes.

"9. Was not the plaintiff under the influence of intoxicating liquors when he entered the train at Kansas City? A. To a certain extent; yes.

"10. After plaintiff had paid his fare, did he not, at several times thereafter, use profane and vulgar language while in the ladies' car? A. The evidence on this question is contradictory; we think, however, that he used profane words a few times.

"11. If you answer interrogatory No. 10 'Yes,' then please state whether or not there were any ladies present in the car at the time? A. Yes.

"12. Is it not a fact that while in the ladies' car the plaintiff made threats of doing the conductor personal injury and violence? A. The preponderance of evidence is, we think, against such a conclusion.

"13. If you answer interrogatory No. 12 'Yes,' please state if such threats were communicated to the conductor by any of the passengers in said car? A.

"14. Was not the plaintiff drunk and boisterous while in the ladies' car on said train? A. No.

"15. Is it not a fact that the conductor removed the plaintiff from the ladies' car to the smoker on account of his being drunk and disorderly? A. No."

"18. While in the smoking-car, did not the plaintiff have an open knife in his hands, and was not such knife and the blade thereof long and thin? A. Yes.

"19. Did not the plaintiff while in the smoking-car threaten to do the conductor personal violence and injury? A. No, we think not."

"21. When the conductor and brakeman came into the smoking-car, did the plaintiff have the knife above referred to in his hands, and was the same open? A. Yes.

"22. Did not some of the passengers in the smoking-car when the conductor and brakeman came in say, 'Look out, he [meaning the plaintiff] has got a knife?' A. Yes.

"23. Did not the brakeman order the plaintiff to

drop the knife before striking him with the lantern?
A. Yes.

"24. How many times did the brakeman order the
plaintiff to drop the knife? A. Once.

"25. How many times did the brakeman strike the
plaintiff with a lantern? A. Three times.

"26. Did not the brakeman, after striking the
plaintiff with the lantern the last time, say to him,
'If you make such a pass at me again, you will be
carried out of this car a corpse,' or words to that
effect? A. Yes.

"27. During all the time the plaintiff was on the
train of cars, what was the treatment and demeanor
of the conductor to him? A. His treatment of and
demeanor toward the plaintiff was good, with the ex-
ception of his action in causing the arrest of said
plaintiff."

The jury returned a general verdict in favor of
Henry, and assessing damages against the railroad
company at $3,000. Motions to set aside the verdict
and for a new trial were overruled, and judgment was
awarded for the amount named in the verdict. The
*Railroad Company* alleges error.

*A. A. Hurd, O. J. Wood*, and *W. Littlefield*, for plain-
tiff in error.

*J. E. Halsell*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : At the trial the plaintiff below, W.
T. Henry, relied upon two grounds of recovery : One
for the alleged assault made upon him by the brake-
man while Henry was a passenger on the train of the
railroad company, and the other for the unlawful ar-
rest alleged to have been made at the instance of the
railroad company while he was a passenger upon the
train, and his illegal imprisonment for about 12 hours

in the jail of Franklin county. Henry was a farmer and stock-shipper, who made a shipment of cattle from Wellington to Kansas City in January, 1890, and who, in consideration of the shipment, received a ticket or stock-pass entitling him not only to accompany the cattle to Kansas City, but to a return passage from that place to Wellington. On the return trip he was unable to find the stock-pass, and was required by the conductor to pay a cash fare. Some difficulty arose between him and the conductor concerning the collection of the fare, in which it was contended by the employees of the company that Henry became profane, violent and abusive, and threatened violence to the conductor. It is claimed that the threats were communicated to the conductor, who, when passing through the train accompanied by a brakeman, found Henry with an open knife in his hand in a threatening attitude ; that the brakeman approached him and demanded that he should throw the knife down, but Henry refused, when the brakeman struck him three times upon the head with a lantern. The theory of the railroad company was that Henry was drunk, abusive, and violent ; that he had become enraged because of the collection of his fare, and had threatened the lives of the employees of the company, and that with an open knife he was endeavoring to carry out his threats at the time he was attacked by the brakeman, and that therefore the conductor and brakeman were justified in committing the assault upon Henry, and inflicting upon him the punishment which they did. On the other hand, Henry claims that he was not drunk nor disorderly ; that while he complained of the collection of the fare and the failure to return it after his stock-pass had been found, he made no threats against the conductor nor any attempt

to attack him with a knife or in any other manner. He claimed that he was using his knife to cut a chew from a plug of tobacco which he held in his hand. The jury have specially found, upon conflicting evidence, that while Henry used some profane language on the train, he was not drunk or boisterous; that he made no threats of doing personal injury or violence to the conductor upon either of the cars on which he rode. There was a further finding that the brakeman struck Henry twice after he had dropped the knife.

According to the testimony which was accepted by the jury the action of the brakeman in assaulting Henry was a gross violation of the duty of the railroad company toward a passenger. As the relation of carrier and passenger existed he was entitled to the highest degree of care and protection against violence or interference by others so long as he conducted himself in a proper manner. If, through the negligence of the company in affording him the care and protection to which he was entitled, the passenger had suffered an injury the company would be liable, and certainly 1. Carrier assault on passenger— liability. the liability is no less where the injury is intentionally inflicted by an employee of the company who was required to exercise care and protection toward the passenger. It is true, if Henry was drunk and disorderly and his conduct such as to render his presence offensive or dangerous, they would have been justified in excluding him from the train; and it is also true, as contended by the company, that the brakeman and conductor might repress acts of violence on his part, and under certain circumstances defend themselves or repel a threatened attack. The finding of the jury, however, makes the brakeman the aggressor, and his attack upon the pas-

senger unjustifiable. ( *Stewart v. Railroad Co.*, 90 N. Y. 588 ; Ray, Neg. Imp. Dut., §§ 106, 107.)

It is next contended that the company is not liable for the illegal arrest and false imprisoment of Henry. The arrest was made without a warrant, and the imprisonment continued for about 12 hours in the county jail of Franklin county. It occurred about one-half an hour after the termination of the difficulty on the train, at a time when Henry was quiet and orderly. When the train reached Ottawa, the conductor reported the occurrence of the difficulty to a superintendent, who advised that Henry should be taken from the train. The conductor inquired for an officer, and when one was found, they went together into the train where the conductor pointed out Henry, who was at once arrested by the officer and taken to prison. Under these circumstances, there can be but little doubt that the conductor procured the false arrest to be made while in the line of his employment, and at a time when the relation of passenger and carrier existed between the company and Henry. It is well settled that when one in charge of a train, and engaged in the business which has been intrusted to him by the company, causes the arrest of a passenger, the company for which he is acting cannot escape liability. According to the testimony, which the jury believed, Henry was arrested at midnight when he was quietly seated in a car ; and without process or any information as to the cause of his arrest, he was hurried from the train and placed in jail, where he was searched and shut up until about noon the next day. The action of the conductor, who must be held to have been acting for the company, was clearly a breach of the contract between the carrier and the passenger, which required that Henry should

2. Illegal arrest of passenger.

be carried in safety to his destination and protected from interference by strangers or against the misconduct of the company's servants. Where the relation of carrier and passenger exists, it is held that no matter what the motive is which causes a servant of the carrier to commit an unlawful act, or to wrongfully inflict an injury upon a passenger, the carrier is responsible for the act and its natural and legitimate consequences. (*Dwinelle v. Railroad Co.*, 120 N. Y. 122 ; *Hamel v. Ferry Co.*, 6 N. Y. Sup. 102 ; *Palmeri v. Railroad Co.*, 53 Am. & Eng. Rld. Cases, 56 ; *Gillingham v. Railroad Co.*, 35 W. Va. 588 ; Ray, Neg. Imp. Dut., § 109.)

There is some testimony tending to show that the officer who made the arrest was employed by and received compensation from the railroad company. Some testimony of an objectionable nature in regard to his authority, as well as in regard to the authority of the superintendent, was received, but in view of the conclusion that has been reached that the conductor, acting in the line of his employment, caused the arrest to be made, the objectionable testimony with respect to the authority of the police officer and of the superintendent becomes immaterial.

The final complaint is that the damages awarded by the jury are excessive, but the view which the jury has taken of the facts would justify the allowance of punitive damages against the company, and, looking at all the circumstances of the case, we cannot say

3. Excessive damages.

that the award of $3,000 is so excessive as to indicate passion or prejudice in the jury or justify the court in disturbing the verdict.

The judgment of the district court will be affirmed.

All the Justices concurring.