THE LEAVENWORTH ELECTRIC RAILROAD COMPANY v. BRIDGET A. CUSICK.

#### No. 11139.

1. STREET-RAILWAY — *Duties to Passengers.* A street-railway company is bound to the highest possible caution and prudence in letting off its passengers at its stopping-places, and its employees must not merely wait a reasonable time to enable the passengers to alight, without looking to see whether such has been done, but they must see and know that the passengers are safely off before starting the car in motion again.

2. ———— *Negligence in Starting Car.* When a street-railway car is negligently started in motion before a passenger endeavoring to leave it has safely alighted from it, and while it is so in motion the passenger is seized with an attack of dizziness which prevents him from holding on, and in consequence he falls off and is injured, the company is liable.

3. ———— *Liability for Damages from Act of Intermeddler.*
A street-railway company is not responsible for injuries resulting
from the act of an intermeddler in the running of its cars which
its employees could not foresee and guard against; but when such
act of intermeddling consists in giving the signal to start the car
in motion, and the conductor in charge, without seeing and know-
ing that a passenger has safely alighted before the car started,
does not stop it as soon as can be, but allows it to continue in
motion in obedience to the unauthorized signal, he will be held
to have ratified and adopted the act of the intermeddler, and the
company will be liable for the consequent injury as caused by an
act of its employee's negligence.

4. ———— *Liability for Damages from Act of Employee off Duty.*
If by custom among street-railway employees, known and assented
to by the company, those who are on duty are in the habit of call-
ing for and receiving assistance from those who are not at the
time on duty, and an employee off duty thus called upon under-
takes to render the assistance asked, he will be regarded as in the
employ of the company for such service, and if he negligently
abandons the work before completing it, whereby injuries to a
passenger occur, the company will be liable.

5. ———— *Liability when Employee on Duty Deputes One off
Duty.*  If, however, such custom does not exist, or existing is not
known and assented to by the company, but an employee on duty
deputes the one off duty to assist him, and he undertakes to do so
but negligently fails fully to perform it, whereby injury to a pas-
senger occurs, the company is likewise liable, because of the neg-
ligent abandonment of duty by the employee directly chargeable
with its performance.

6. ———— *Variance— Objection Too Late.*  When additional
bodily injuries and damages resulting therefrom were not alleged
in the plaintiff's petition, but evidence of them was received upon
the trial without objection by the defendant, and upon which evi-
dence the defendant cross-examined the witnesses giving it, an
objection to it cannot be made for the first time by a request to
instruct the jury to disregard it in making up their verdict.

Error from Leavenworth district court; Louis A.
Myers, judge.  Opinion filed June 10, 1899.  Affirmed.

*John H. Atwood,* and *W. W. Hooper,* for plaintiff in
error.

*Fenlon & Fenlon,* and *B. F. Enderes,* for defendant in
error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action brought by Bridget A. Cusick, the defendant in error, against the Leavenworth Electric Railroad Company, the plaintiff in error, to recover damages for injuries negligently inflicted upon her as a passenger on one of the defendant's cars. The case is brought to us upon the evidence, under a claim that such evidence fails to show negligence upon the part of the company and does show negligence upon the part of the defendant in error. The claim of negligence made in the petition was that, while the plaintiff was descending the steps of the car for the purpose of leaving it, the conductor negligently and without notice to her signaled the motor-man of the car to go ahead, which signal was obeyed, the car started, and the plaintiff in consequence thrown from the car steps to the street. The evidence showed that plaintiff and her child were passengers on a south-bound car on Third street in the city of Leavenworth. She told the conductor, one Flora, to let her off at Pine street. As the car approached Pine street it was quite full of passengers. The conductor desired to occupy his time in collecting fares, and in order to enable himself to do so asked one Buckley to stop the car at Pine street and let the plaintiff and her child off. This Mr. Buckley promised to do. Buckley was a conductor on another car belonging to the company, and at the time in question was off duty, riding on Conductor Flora's car. It was the habit among conductors to assist one another in such cases. Conductor Flora testified : '' Ques. But as far as the management of the car was concerned, he ( Buckley) was a stranger, was n't he? Ans. Comparatively so. But still, it had been done on numer-

ous occasions.    One conductor would help another one out.''

Whether the company was aware of these frequent and friendly transferences of duty between its conductors and assented to them was not shown by the testimony.   Buckley gave the signal to stop for Pine street, and left the car at that point in advance of the plaintiff and her child, without giving the starting signal.   The plaintiff's child descended in safety from the car steps to the street, and the plaintiff herself went as far as the platform steps, when some unauthorized and unknown person gave the starting signal to the motorman.   He obeyed it.   The car started with the plaintiff on the steps.   She grew dizzy, her head swam, she could not hold on to the platform railings, and because thereof, as she testified, fell to the street, sustaining the injuries for which she sued. The car had gone a quarter of a block, perhaps more, from the point of starting when the plaintiff fell. Conductor Flora supposed that Buckley had given the starting signal, and supposed that the plaintiff had safely alighted.   Very soon after the car started he went out upon the rear platform, and finding her apparently about to leave the moving car directed her to wait for him to stop it.   There is conflict in the testimony as to whether she jumped off or fell off. However, the jury having found in her favor upon this point, we are concluded by the finding.

Two claims of error arising upon the facts thus far stated are made.   One is that the plaintiff's fall, according to her own testimony, was not caused by the premature starting of the car, but was caused by the attack of dizziness which overcame her and prevented her from holding on to the platform railings.   It is argued that the plaintiff in error cannot be held re-

sponsible for the consequences of sudden attacks of vertigo, or other like ailments, which disable people from maintaining their balance on its cars. As a reply to this, it is sufficient to say that it is fairly inferable from plaintiff's testimony, although not stated by her in direct terms, that the cause of her dizziness and inability to hold on to the car was its premature and sudden starting; but beyond this, and as a proposition of law, it is undeniably true that if the car was negligently started, the company is liable for such injuries as resulted from its negligence concurring with plaintiff's physical ailments or disabilities. To be subject to vertigo is not a fault. To be seized with an attack of it at a time when the defendant was performing a negligent act toward the plaintiff was not contributory negligence in the plaintiff. Street-railway companies must have a care for the physically diseased and infirm. They must know that some of such unfortunates are perhaps among their passengers, and they are therefore bound like other railroad companies to the observance of the highest possible diligence to protect the lives and insure the safety of such passengers. (*The Citizens' St. R. W. Co. v. Carey*, 56 Ind. 896.) We do not mean to say that street-railway companies must know of the latent infirmities of their passengers and regulate their own conduct and that of their employees accordingly, but we mean to say that general rules which will insure the safety of the possibly diseased and infirm as well as the healthy, alert and active among their passengers should be observed, because they must know that their passenger customers belong to all classes. Among these rules is the obligation to see that passengers have alighted in safety from the car before starting again.

It is well expressed in *Anderson v. The Citizens' Street Railroad Company*, 12 Ind. App. 194, 38 N. E. 1109 :

"There is a marked difference between the duties the law imposes upon those who operate street-railways and those who operate ordinary steam-railways. The latter usually run upon schedule time, and have fixed places for receiving and discharging passengers. There is a higher degree of care imposed upon street-railways than upon ordinary steam-railways. When their cars stop for passengers to alight, it it the duty of their servants to stop long enough for the passengers to alight, and to see that the car does not start again while any one is attempting to alight or exposed to danger. Stopping a reasonable time is not sufficient, but it is the duty of the conductor or those in charge to see and know that no passenger is in the act of alighting or in a dangerous position before putting the car in motion again."

Of course, what is meant by the rule that stopping a reasonable time is not sufficient is that assuming, without looking, that because a reasonable time has elapsed the passenger has safely alighted, is not sufficient diligence. Had the plaintiff been seized with dizziness while the car was standing waiting for her to alight, and she had in consequence fallen and been injured, no blame could attach to the company ; but falling as she did from dizziness occurring while the car was negligently in motion, whether the dizziness was a consequence of its motion or otherwise, the company is liable for the resulting injuries.

Another claim of plaintiff in error arising upon the facts hereinbefore stated is that the premature starting of the car was the act of the unauthorized person who rang the bell and gave the starting signal, and not the act of the company. The claim is that it was the duty of the motor-man to obey the starting signal ; that he could not know that it had not been given by

the conductor, but was bound to assume that it had been given by him; that the conductor did not know. that the signal had been given by an intermeddler, but was at liberty to assume that it had been given by Buckley, who had promised to stop the car and let the plaintiff off. A sufficient answer to this is that it does not appear that Buckley promised to do more than let the plaintiff off at Pine street. This of course implied the obligation to give the stopping signal, but it cannot be said to imply the obligation to give the starting signal; that is, it cannot, as a matter of law, be said to imply the obligation. If, therefore, Buckley's obligation to give the starting signal could not be implied from the agreement to stop the car and let the plaintiff off, the act of the intermeddler who did give it, being known to Conductor Flora and not repudiated by him, must be regarded as assented to and adopted by him. So adopted by him, it became his act — his negligent act.

We do not deny the legal doctrine advanced by counsel for plaintiff in error, which is that a railroad company cannot be held responsible for injuries to a passenger resulting from the act of an intermeddler which it could not foresee and guard against, but the facts of this case do not permit of its application. We will, however, for the purpose of meeting all phases of the contention of counsel for plaintiff in error, assume that Buckley's agreement to let the plaintiff off implied an obligation upon his part to give the starting as well as the stopping signal. He did not do it, but, after stopping the car got off himself and left the remainder of his duty unfulfilled. Whose fault was this? If the custom among conductors to assist one another in exigencies such as the one under consideration, as testified to by Conductor Flora, was

known to the company and assented to by it, or not dissented from, Buckley then became by virtue of that authorized custom the company's servant for the purpose of starting the car again as well as stopping it. In other words, for the performance of that particular duty he became the company's agent to see that the plaintiff was safely off the car before it started up, and the neglect of that duty, leaving the plaintiff exposed to the premature starting of the car through the act of an intermeddler, was the negligence of one of the company's employees.

If on the other hand the custom among the company's conductors to lend one another assistance in such cases, as testified to by Conductor Flora, was unknown to the company and therefore unauthorized by it, or if no such custom existed, Conductor Flora was himself guilty of negligence in abandoning the duty of his position, or in deputing its performance to another, and for such abandonment of duty by him the company is as much responsible as for the abandonment of the same duty by the man Buckley. There is no escape from these conclusions. They are irrefutable. If Flora rightly deputed the performance of his duties to Buckley — that is, rightly as to the company — and Buckley negligently omitted to perform them, the company is liable. If Flora had no right to turn the performance of his duties over to Buckley, but nevertheless did so, he must be held to have negligently abandoned them, in which event the company is equally liable. If the authority of adjudged cases be necessary to enforce these manifestly sound propositions, it can be found in *Haluptzok v. Great Northern Ry. Co.*, 55 Minn. 446, 57 N. W. 144, and *Booth v. Mister*, 7 Carr. & Payne, 66.

Some of the plaintiff's testimony was in proof of an injury and resulting damages which had not been al-

leged in the petition, and it is sought to apply thereto the rule declared in *Railroad Co. v. Willey*, 57 Kan. 764, 48 Pac. 25. However, an examination of the record of the introduction of this testimony shows that plaintiff in error made no objection to its reception. It was allowed to go to the jury as offered, and upon it the plaintiff in error availed itself of the privilege of cross-examination. No objection was made to it except by way of request for an instruction to the jury forbidding them to allow damages for the injuries proved but not pleaded. This was too late. (*Johnson v. Mathews*, 5 Kan. 118.)

Some minor claims of error raising questions of variance between the pleadings and proof are made. They are, however, quite technical and unsubstantial and lacking in merit.

The judgment of the court below is affirmed.