AMOS F. MOREY, *Appellee*, V. THE CHICAGO, ROCK
ISLAND AND PACIFIC RAILWAY COMPANY, *Appellant.*

No. 17,279.

SYLLABUS BY THE COURT.

1. COMMON CARRIER — *Passenger* — *Assault by Brakeman.* A
carrier is liable for a wrongful assault upon a passenger by
a brakeman, at least while such brakeman is acting within
the line of his employment.

2. ——— *Assault—Liability—Question of Fact.* Where a train
reached a terminal station. at which train crews are changed
and the coach in which passengers were riding was taken out
of the train without notice to passengers and placed on a
siding about four hundred feet away while one of the pas-
sengers was in the dining room eating his breakfast, and
when the passenger returned to the train and found a new
crew in charge of the train and the car in which he had been
riding and which contained his baggage had been set out,
and when he went to that car for his baggage the brakeman
who had been with the train up to that point was present
in uniform and assuming to be in control of the car, and
when chided for not warning the passengers that the car con-
taining their baggage was to be cut out, made a violent as-
sault on the passenger, *held*, that although it was the end of
the brakeman's run, and that ordinarily his duty ceases when
the new crew takes charge of the train, the testimony is
sufficient to make a question of fact whether the brakeman
was a servant of the company and in the line of his employ-
ment when the assault was made and is sufficient to support
the verdict of the jury finding the company liable for the in-
juries inflicted.

Appeal from Sumner district court. Opinion filed
December 9, 1911. Affirmed.

*M. A. Low*, and *Paul E. Walker*, for the appellant.
*J. D. Houston*, and *C. H. Brooks*, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: A brakeman of the Chicago, Rock
Island and Pacific Railway Company, named York,
made a personal assault upon Amos F. Morey, who was

a passenger on one of the trains of the railway company, and to recover damages for the injuries inflicted this action was brought.

Morey boarded the train at Enid, Okla., to go to Wichita, Kan. Caldwell is an intermediate terminal station, and when the train approached that station it was announced that there would be a twenty-minute stop for breakfast. At this station there is a change of train crews and, to some extent, of equipment. When the train arrived at Caldwell Morey went to the dining room, where he remained for about fifteen minutes. On his return to the train he discovered that the car in which he rode and which contained his valises had been taken out of the train and set on a siding about four hundred feet away. Another brakeman had taken the place of York and different employees had taken charge of the outgoing train. Finding that the car had been detached and his baggage taken with it Morey expressed his indignation in a forcible manner. He was directed to the car containing his baggage, to which he proceeded, and finding York at the car he complained about the carrying off of his baggage, and, after an angry colloquy in the car, York attacked Morey, striking him on the head and body with a molding, and continued the attack until Morey had reached the ground when others came to his relief.

Whether York was acting within the scope of his duty and employment so as to make the company liable for his acts was the principal controversy. York testified that when the train arrived at Caldwell and he had assisted the passengers to alight he went at once to the baggage car, got his train box and took it to the box house near the depot, where he changed his coat and hat, and that then his duties to the railway company ended until he reported for duty for his next run. He states that then, in company with his child, he started home, and that his route took him near the car in which Morey's baggage was left. Morey, he says,

used opprobrious language and applied vile epithets to him which led him to jump on the car in search of an iron poker with which to strike and punish Morey, and not finding it he picked up the piece of wood molding with which he clubbed Morey. On the other hand, there was testimony that when Morey reached the car he found York there with his uniform on, and when Morey asked why he did not tell him that the car was to be cut out he replied with much profanity that he was not going to take any more abuse for that, and that if Morey wanted his baggage to take it out as he had to lock up the car, and while Morey was getting his grips York continued to curse and abuse him, and as Morey passed out with his grips he was repeatedly struck and kicked by York.

In answer to special questions the jury found that York was the aggressor in the occurrence; that he had not put away his train box and lamps before the difficulty arose; that he had not started home, as he had stated, prior to the assault; and that he did not notify the passengers in the car in which Morey had been riding that the car was to be set out at Caldwell. It is insisted by the railway company that under the evidence no liability was shown and that a verdict in its favor should have been directed. The contention is that the assault was committed when York was not acting in the line and discharge of his duties to the railway company, or, rather, was not engaged in carrying out the contract of transportation between appellant and appellee.

Among the duties of a brakeman is to "open and close the car doors, and assist the conductor in the proper disposition of the passengers and in preventing them from riding on the platform or in any way violating the regulations provided for their safety, in preserving order, and in all things requisite for the prompt and safe movement of the train and the comfort of the passengers." There was testimony that it was the

duty of the brakeman to assist passengers with their baggage and that he usually stays with the car until passengers get their baggage. On the part of appellee it is insisted that the carrier is liable for the assault of its servant upon a passenger on one of its coaches even where the servant has departed from his duty and has committed it under circumstances that have no connection with the discharge of his duty, and he cites: *Railroad Co. v. Cusick*, 60 Kan. 590, 57 Pac. 519; *Railway Co. v. Divinney*, 66 Kan. 776, 71 Pac. 855; *Dwinelle v. N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 117, 24 N. E. 319; *Commonwealth v. Brockton Street Railway*, 143 Mass. 501, 10 N. E. 506; *Railway Co. v. Dowgiallo*, 82 Ark. 289, 101 S. W. 412; *Baltimore, etc., R. Co. v. Davis*, 44 Ind. App. 375, 89 N. E. 403; *Shelby v. Met. Street Ry. Co.*, 141 Mo. App. 514, 125 S. W. 1189; *Zeccardi v. Yonkers R. R. Co.*, 190 N. Y. 389, 83 N. E. 31; Note, 32 L. R. A., n. s., 1201; 3 Thomp. Com. on the L. of Neg., § 3169; 2 Hutchinson, Carriers, 3d ed., § 1093.

It is unnecessary to determine the scope and application of this rule in this case, as there is testimony tending to show that York was engaged in the discharge of his duties at the time of the assault. The baggage of Morey and other passengers was still in the car, and, according to the findings, there had been no warning that the car was to be set out, and no opportunity given the passengers to transfer their baggage to another car. Morey was still a passenger, and the contract of carriage between him and the appellant was only partially performed. In *A. T. & S. F. Rld. Co. v. Henry*, 55 Kan. 715, 41 Pac. 952, it was said:

"As the relation of carrier and passenger existed, he was entitled to the highest degree of care and protection against violence or interference by others so long as he conducted himself in a proper manner. If, through the negligence of the company in affording him the care and protection to which he was entitled, the passenger had suffered an injury, the company would be liable,

and certainly the liability is no less where the injury is intentionally inflicted by an employee of the company who was required to exercise care and protection toward the passenger." (p. 721.)

While York claims that he had laid aside his uniform and his character as a brakeman for the time being, and that he was no longer in the performance of any duty to the company, there is testimony to the contrary, and testimony that he was acting in the line of his employment when the assault was made. It was found that he had not taken off his train box and started home, as he claimed, and witnesses stated that he was in the car with his uniform on when he made the assault. Since the baggage of passengers was still in the car, it was necessary that some employee of the company should protect it and provide for its transfer. According to York's testimony, other passengers had come for their baggage and had irritated him by their complaints. Brakemen, it seems, carry keys for cars, and York told Morey to take his baggage out, and do it "d—— quick," as "I have got to lock thus car up."

There is a conflict in the testimony as to York's conduct, statements, and the capacity in which he was acting. There is testimony that at terminal stations cars to be set out are cared for by the yard crew, and not by the train crew, and that the duties of the incoming crew cease as soon as the outgoing crew takes charge, and that the train crew sometimes transfers baggage when a car is set out without notice, and the conductor said that if a car was to be set out, and he knew that baggage remained in the car, he would see that is was transferred. The fact that the brakeman was in the car, wearing his uniform, and assuming to control the car and hurrying passengers in removing the baggage so that he could lock up the car, strongly tends to show that he was still acting for the company. It was obviously a question of fact for the determination of the jury whether the brakeman was acting within the scope

of his employment at the time of the assault, or whether his duties to the company for the day had ceased. There is no dispute that appellee was a passenger who had not yet reached his destination, and that he was still entitled to the protection and care from the company which the law requires of carriers. Since the car in which he rode was set out of the train without notice to the passengers, it devolved on the company to care for the baggage left in the car. From some of the testimony it appears that the brakeman was attending to this duty for the company, and it was fairly a question for the jury whether York was acting as a brakeman and servant of the company down to the time the assault was made.

There is some criticism of one instruction given, but a special finding of the jury rendered the objection immaterial.

The judgment of the district court is affirmed.