No. 24,260.

GLENN MIDDLETON, *Appellee,* v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. INTENDING PASSENGER—*Negligently Shot by Station Agent—Liability of Railroad Company.* A railroad company is liable for the damages sustained by an intending passenger who went to the railroad station at an appropriate time for the purpose of taking passage on a train, and who at the station was negligently shot by the station agent who, about two hours before, had been assaulted and shot at by persons attempting to rob the station, and who, at the time he shot the intending passenger, thought the latter was one of those who had attempted to rob the station and was intending to shoot again at the agent.

2. SAME—*No Wantonness or Malice Shown—Punitive Damages Not Recoverable.* Punitive damages cannot be recovered under the circumstances described in the first paragraph of this syllabus where there is no evidence of wantonness or malice on the part of the agent.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed February 10, 1923. Modified.

*W. P. Waggener, J. M. Challis,* both of Atchison, and *S. H. Piper,* of Independence, for the appellant.

*Thurman Hill,* of Independence, and *Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment in favor of the plaintiff for $16,000 for damages, compensatory and punitive, caused by being shot by the defendant's agent at Altoona, Kan.

The defendant maintains a station at Altoona and keeps an agent in it during the nighttime. Frank E. Douglas was the night agent at that place. About 1:50 a. m. on May 16, 1921, several persons attempted to rob the station. They shot at the agent three times. The agent shot at them once and then retired from the ticket office, which was brilliantly lighted, to the freight room, which was dark and was a secure place, and from which he had command of the entrance to the ticket office from the waiting room. The attempted robbers remained at the station and walked about it talking for some time.

The defendant ran a passenger train from the north which was due at Altoona at 4:37 a. m. About thirty minutes before the train was due, a passenger went into the station and remained in the waiting room. A short time later, the plaintiff went to the station for the purpose of taking the train to Neodesha. He went to the ticket window. Douglas, the agent, was not there. The plaintiff inquired of the other intending passenger concerning the whereabouts of the operator. That passenger replied that he had not seen the operator. The plaintiff then stated that he would go out and see if he could find him. Plaintiff went outside and approached a window, from which he was shot by the station agent, who thought that the plaintiff was one of those who had attempted to rob the station and was intending to shoot at the agent again.

The jury answered special questions as follows:

"1. Do you find that at the time plaintiff was shot, Douglas was in charge of the depot? A. Yes.

"2. At the time plaintiff was shot, do you find that he was at the depot intending to purchase a ticket, and to take the 4:37 train? A. Yes.

"3. Do you find that it was the duty of Douglas, at the time plaintiff was shot, to protect the property of his employer, including its tickets and money? A. Yes.

"4. Do you find that prior to the time plaintiff was shot an attempt had been made to hold up Douglas for the purpose of obtaining from him his

Middleton v. Railroad Co.

employer's property, and if so, how long was this before plaintiff was shot? A. Yes, about two hours and twenty minutes previous.

"5. Do you find that there was an electric light near the depot shining so that the place where plaintiff was at the time he was shot was illuminated? A. Yes.

"6. Do you find that before plaintiff was shot, Douglas gave plaintiff any warning of any kind, and if so please describe the character of the warning given? A. No.

"7. Do you find that before the shot which struck plaintiff was fired, Douglas took any precautions or exercised any care to find out whether or not plaintiff was only an intending passenger for the train which was due to leave at about 4:37 a. m.? A. No.

"8. At what time do you find plaintiff was shot? A. About 4:15 a. m.

"9. If you find that the plaintiff was guilty of any conduct such as would justify a reasonably ordinarily prudent man, situated as Douglas was, in believing that plaintiff was about to do him great bodily harm, please state what that conduct was on the part of the plaintiff. A. No.

"10. What amount, if anything, do you allow plaintiff for punitive damages? A. $5,000.

"11. When the shots were fired at the defendant's agent did he retreat to the unlighted freight room? A. Yes.

"12. Why did the agent go into the unlighted freight room? A. To protect himself and company's property.

"13. When the agent went into the freight room did he have a reasonable fear of being killed or receiving bodily harm? A. Yes.

"14. While he remained in the freight room was he still laboring under the fear and excitement caused by the attempted 'hold-up'? A. To some extent.

"15. Did the agent leave the money in the cash drawer when he went into the freight room? A. Yes.

"16. Did the plaintiff look into the window of the freight room? A. No.

"17. When the plaintiff appeared to the agent at the window of the freight room did the agent believe that the plaintiff was one of the persons who had recently assaulted him? A. Yes.

"18. If you answer the last above question 'No,' then state whom did the agent believe the plaintiff to be? A. ———.

"19. Why did the agent shoot the plaintiff? A. On account of unreasonable fear.

"20. If you find for the plaintiff, then state what negligence you find against this defendant. A. Gross negligence in not using proper judgment in finding out who the man near the window was before he shot."

1. The defendant's principal contention is that Frank E. Douglas, when he shot the plaintiff, was' not acting within the scope of his authority; that he was not defending the company's property; and that he was acting in self-defense. This contention was advanced in the trial court in support of a demurrer to the plaintiff's

evidence, in requested instructions, in a motion for judgment in favor of the defendant on the findings of the jury, in exceptions to instructions given by the court, in objecting to the court's approving the general verdict, and in objecting to the rendition of judgment on that verdict. These matters are argued to this court under several heads, but one discussion is all that is necessary to dispose of the entire contention. Certain rules of the company were introduced in evidence. They were as follows:

"In case of danger to the company's property employees must unite to protect it."

"They (referring to station agents) have charge of and are responsible for the company's books, papers, buildings, sidings and grounds at the respective stations, and are also responsible for the property entrusted to the company in the transaction of business."

"All loiterers, disorderly and riotous persons interfering with the comfort or convenience of passengers, or of the employees of the company in the performance of their duties must be removed from the premises."

"Agents must have their ticket offices open at least 30 minutes before the departure of any train carrying passengers, and keep them open until the departure of such train, and they must make every proper effort to prevent passengers from getting upon the trains without a ticket."

These rules and the findings of the jury completely answer the argument of the defendant. The operator may have acted, and probably did act, in self-defense, but he likewise defended the company's property. The robbers were not successful. The agent was acting within the scope of his authority in attempting to defend the company's property, although he may have been badly frightened and may have remained in the freight room for more than two hours.

In 10 C. J. 613, this language is found:

"Where one with the *bona fide* intention of becoming a passenger, and with the express or implied assent of the carrier, goes on the carrier's premises, into the station, ticket office, or waiting room, at a time when such place is open for the reception of passengers intending to take passage, even though without the passenger's knowledge, it has been opened without authority, or goes from the ticket office or waiting room on to the platform or other proper part of the premises to take a seat in a car, he ordinarily places himself in the position of a passenger, although he has not purchased a ticket."

We quote from 10 C. J. 889 as follows:

"In accordance with the foregoing rule, it is generally held that where any servant or agent of the carrier while engaged in carrying out the carrier's duty of transportation assaults a passenger, or otherwise infringes the right of protection to which he is entitled, the carrier is liable, irrespective of whether the servant or the agent in the thing done was acting for the carrier

or for his own purposes, unless the assault was justified by some act of the passenger."

In *A. T. & S. F. Rld. Co. v. Henry*, 55 Kan. 715, 41 Pac. 952, this court said:

"The contract of a common carrier with a passenger requires the carrier to protect the passenger against interference or injury arising from the negligence or willful misconduct of its servants while engaged in performing the duties which the carrier owes to the passenger; and, where a passenger upon a railroad train is unjustifiably assaulted and beaten by an employee who owed him the duty of protection, the railroad company is responsible for his acts and liable for the injury suffered." (Syl. ¶ 1.)

In *Mo. Pac. Ry. Co. v. Divinney*, 66 Kan. 776, 777, 71 Pac. 855, this court said:

"While there is no direct allegation found in the petition that plaintiff was a passenger at the time of the assault made upon him by the agent of the defendant company at Ames, and while the plaintiff was not in fact a passenger upon one of the trains of the defendant at the time of his assault, and while the petition is unskilfully drawn, and the real issue obscured, yet, from a careful reëxamination of the petition and the evidence found in the record, we are now of the opinion that sufficient facts are stated in the petition, and sustained by the evidence, to constitute plaintiff in law a passenger at the time he was assaulted, and to entitle him to that protection from the company which the law affords a passenger to guard him from an assault made by an employee or agent of the carrier, whether at the time such employee or agent is engaged in the discharge of his duties to the company or not, such wrongful act of the agent being a violation of the contract of his company to carry its passengers safely and accord them proper treatment."

The decision in the last case was rendered on rehearing. From the first opinion rendered, found in 69 Pac. 351, and from the opinion on rehearing, it can be gathered that the plaintiff in that action had gone to the railroad station for the purpose of becoming a passenger, but had not purchased a ticket at the time he was injured by the station agent.

The plaintiff was an intending passenger and was entitled to protection from assaults by the employees of the defendant.

2. The verdict was for $11,000 compensatory damages and $5,000 punitive damages. It is urged that "the court erred in submitting to the jury the question of punitive damages." This will include the objection that it was error to render judgment for such damages. Did the circumstances warrant the court in submitting that question to the jury? There was no evidence of wantonness or of malice, and no evidence of any intention on the part of the station agent

to injure the plaintiff unless the latter was one of those who had attempted to rob the station. It may be assumed that the agent was negligent in not ascertaining that the plaintiff was not a passenger before the shot was fired, but that negligence cannot be said to have been so gross or wanton as to warrant the court in submitting to the jury the question of punitive damages. Trainmen, bank employees, and the financial officers of all business enterprises are justified in defending, and it is their duty to defend, with force if necessary, the property committed to their care, against those who would terrorize and rob. The agent was negligent in not being sure before he shot, but that negligence was not of such a character as justified the court in submitting to the jury the question of punitive damages.

The judgment for $5,000 punitive damages is reversed, but the judgment for $11,000 for compensatory damages is affirmed, and the trial court is directed to enter judgment against the defendant in favor of the plaintiff for the last named amount.