No. 32,124

Zena Higgins, *Appellee*, v. The Southern Kansas Stage Lines Company, *Appellant*.

(42 P. 2d 599)

Opinion filed April 6, 1935.

*John W. Blood, F. W. Prosser,* both of Wichita, and *J. T. Jennings,* of Kansas City, Mo., for the appellant.

*Blake A. Williamson* and *James K. Cubbison,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This was an action by Zena Higgins for recovery of damages from the Southern Kansas Stage Lines Company because of its negligence in failing to provide her, a prospective bus passenger, with a comfortable place in which to await the arrival of the bus at the North American Hotel, Ottawa, where defendant and the Southern Kansas Greyhound Company jointly used the hotel lobby as a station room. Because of this alleged negligence plaintiff was compelled to leave the waiting station in the hotel and

go out in the cold and was denied the privilege of a comfortable place to await the coming of the bus. It was the seventh of January and the night was cold, snowy and blustery. It appears that plaintiff and her husband purchased round-trip tickets from defendant company in Kansas City and went to Ottawa, where they visited over Sunday. That evening they went to defendant's station in Ottawa to return to Kansas City. On the front of the hotel a sign said "Southern Kansas Stage Lines Bus Depot." They entered the lobby of the hotel, walked over to a desk where there were pictures of buses and maps and asked the man behind the desk if he was the manager or the depot agent, and when informed that he was they presented their return tickets and he said they were all right. They inquired when the bus to Kansas City would arrive and were informed it was due about the hour of 9:02, but that it would probably. be a little late. At the time it was about 7:30 p. m. After talking to the man in charge of the ticket desk they started to take seats in the hotel lobby, but were immediately informed by the same man that they could not sit there. He informed them there was no place in the lobby for colored people. When plaintiff asked what she was to do, as it was snowing and blowing and cold outside, his response was that it could not be helped, that they could not stay in the lobby. Plaintiff and her husband then proceeded to leave the hotel lobby, but as they passed through a small vestibule they stopped before a little gas heater to warm themselves, and then continued outside, where they stood in front of the hotel in the cold or walked up and down the block attempting to keep warm until the bus arrived, about an hour and a half afterwards.

When the bus finally arrived they presented their tickets to the driver and informed him of what had occurred in the bus waiting room. The driver responded that it had happened down there before, and was not an uncommon thing. The bus was a Southern Kansas Greyhound Line bus, with which the defendant company interchanged passengers and divided receipts.

On the way to Kansas City plaintiff's throat became sore and she commenced aching and had chills. When she arrived home she gargled and used some liniment and the next day called a doctor. Two days later plaintiff was running a high fever and had developed bronchial pneumonia. The doctor treated her for over three weeks, visiting her some nine times. Thereafter plaintiff developed pleurisy which continued for several weeks. Plaintiff sued the Southern Kan-

sas Stage Lines Company and recovered a judgment in the amount of $500.

The jury made special findings of fact as follows:

"1. What company did plaintiff ride with from Ottawa to Kansas City, Kansas? A. Southern Kansas Greyhound, to Fourteenth and Main, Kansas City, Mo.

"2. Did the Southern Kansas Stage Lines Company have any bus leaving Ottawa for Kansas City, Kansas, after 12:50 p. m. January 7, 1934? A. No.

"3. At what time did plaintiff arrive at the hotel in Ottawa before taking the bus? A. Seven-thirty to eight o'clock.

"4. If you find for the plaintiff, state what acts on the part of the defendant, The Southern Kansas Stage Lines Company, caused said injuries, if any. A. Ejected from building by representative.

"5. If you find for the plaintiff, state the items of damage and the amount of each. A. Doctor bill, $27; medicine and sickness, $473.

"6. Did plaintiff or her husband purchase a round-trip ticket on January 6, 1934, good for passage to and from Ottawa, Kan., on defendant's bus? A. Husband.

"7. If you answer question No. 6 in the affirmative, state whether plaintiff or her husband presented said tickets to defendant company for passage on their bus at Ottawa, Kan., on the day in question. A. Yes; husband.

"8. If you answer question No. 7 in the affirmative, state if defendant's agent in charge of said bus station at Ottawa, Kan., advised plaintiff or plaintiff's husband that defendant's next bus would arrive at Ottawa at 9:02 p. m. of said day. A. Yes; husband.

"9. Was plaintiff requested by said defendant company's agent to leave the bus station on the night in question? A. Yes."

Defendant filed motions for a new trial and for judgment on the special findings of the jury. The motions were overruled and judgment on the verdict was allowed.

Appellant argues five assignments of error. The second, fourth and fifth assignments are somewhat related and will be considered together. They concern the refusal of defendant's request for an instructed verdict, refusal to instruct that defendant could not be held for the negligence of agents or employees of the Greyhound company, and in overruling defendant's motion for judgment on the special findings. These complaints are all founded on the evidence and findings, to the effect plaintiff rode the bus of the Greyhound company back to Kansas City and not the bus of appellant; that there was no other bus out of Ottawa to Kansas City that night; and that appellant had no permit to sell its own transportation between Ottawa and Kansas City, and did not share in the revenue from the trip; that plaintiff came to the station to catch a Grey-

hound bus and was a prospective passenger of that company and that in respect to the plaintiff, the employees at the station were the employees of the Greyhound company and not appellant, and were not acting within the scope of an employment with defendant company in ordering plaintiff from the lobby.

There are several answers to these arguments. In the first place, the first and second findings of the jury, that plaintiff rode the Greyhound bus to Kansas City and that there was no bus of defendant available that night, do not necessarily support defendant's contention. These findings must be construed with later ones wherein the jury found it was defendant's representative who ejected plaintiff from the station; that the return tickets were presented to defendant company for passage on its bus and that it was defendant's agent in charge of the bus station who advised plaintiff that defendant's next bus would arrive at Ottawa at 9:02. Plaintiff presented herself at the place designated as defendant's bus depot at Ottawa. Her ticket, issued by defendant company, was recognized by the man who said he was in charge of the ticket office and who advised her as to the time of defendant's next bus. Plaintiff was entitled to believe the agent was speaking of the defendant's bus and that she was entitled to comfortable and adequate accommodations until the bus arrived. Furthermore, defendant is concluded by the pleadings with respect to the question of the person in charge of the station being defendant's agent. Plaintiff alleged in her petition that such person was the agent of defendant company and this allegation was not denied by defendant under oath. Defendant is bound by his statements and responsible for his acts. In 4 R. C. L. 1132, 1133, it is said:

"A ticket seller in a union depot, whose business it is to sell tickets over various lines of railway whose trains enter and depart therefrom, is such an agent of any company furnishing tickets to be sold there which are accepted by the conductors of its trains as its tickets, that the company is bound by any of the declarations of such ticket seller as to the running of its trains. . . . It is, also, usually held to be within the implied power of a ticket agent to bind the company by his representations concerning the route to be taken by a passenger; as to what trains the ticket will be good for passage upon, at least, in the absence of knowledge on the part of the passenger that such information was incorrect, . . ."

Defendant cites and relies upon *A. T. & S. F. Rld. Co. v. Cochran*, 43 Kan. 225, 23 Pac. 151. In that case a party took passage on a train of the Atchison road for Holliday, a junction of the Atchison

and Southern Kansas. There he purchased a ticket over the Southern Kansas. He was compelled to wait. When the Southern Kansas train pulled in on the second track he started to cross to it and was struck by an Atchison train. The following quotation from the opinion sufficiently indicates the lack of basis for the claim of similarity:

"It is clearly apparent from the instructions of the court and the findings of the jury, that the recovery for the plaintiff below against the railroad company was upon the theory that Mr. Gibson, at the time of his injury, was entitled to the rights and privileges of a passenger of the Atchison company. This upon the claim that the Atchison company controlled, directed and managed the Southern Kansas Railway. The testimony in the record will not sustain a verdict upon this ground. . . . As the rights and powers of the Atchison road in the Southern Kansas were those of a stockholder only, the instruction of the court that the jury might find from the testimony that the Southern Kansas Railway Company, for all practical purposes, was managed, controlled and operated by the Atchison company, was misleading. The finding of a verdict upon this and similar instructions cannot be sustained.

"The fact that Mr. Gibson purchased a ticket to ride over the Southern Kansas road at the station of the Atchison road at Holliday did not make him a passenger of the Atchison road, or make the Atchison road responsible for the negligence of the Southern Kansas road. The jury found that the person in charge of the ticket office at the station of Holliday was agent both for the Atchison Company and the Southern Kansas Company; but even if the ticket agent at Holliday acted for the Atchison road, and the Atchison road sold the ticket for the Southern Kansas road, this would not make the Atchison road liable for the negligence of the Southern Kansas. The ticket purchased by Mr. Gibson shows that the contract of carriage was made on behalf of the Southern Kansas Railway Company." (pp. 233, 236.)

The case is clearly not applicable or controlling in the present case. Here the action was brought against the Southern Kansas Stage Lines Company, which issued the ticket carried by the plaintiff. The agent of that company was the one who examined and approved the ticket. He was in charge of that station marked on the building as "Southern Kansas Stage Lines Bus Depot." The plaintiff and her husband were recognized as prospective passengers entitled to the comforts and accommodations of passengers for the coming bus, and were afterward turned out, holding that they could not remain in the depot and were driven out in the cold on a January night.

Defendant argues that the station agent was acting outside the scope of his employment. But defendant's own witness testified that he was the acting bus agent for the Southern Kansas Stage

Lines; that he did not permit persons using the hotel lobby to have the run of the place and he would stop them from going places they were not supposed to go, and that such was the general order of all officials. It is held in many jurisdictions that the doctrine of scope of employment of the person in charge of the station is inapt and erroneous to apply to a case similar to this. (4 R. C. L. 1168.)

In 10 C. J. 889 it is said:

"In accordance with the foregoing rule, it is generally held that where any servant or agent of the carrier while engaged in carrying out the carrier's duty of transportation assaults a passenger, or otherwise infringes the right of protection to which he is entitled, the carrier is liable, irrespective of whether the servant or the agent in the thing done was acting for the carrier or for his own purposes. . . ."

See, also, *Middleton v. Railroad Co.*, 112 Kan. 793, 212 Pac. 909; *A. T. & S. F. Rld. Co. v. Henry,* 55 Kan. 715, 41 Pac. 952.

Defendant makes no contention that it was not bound to provide comfortable accommodations for its prospective passengers. Under the provisions of R. S. 1933 Supp. 66-1,110, and R. S. 66-242, it would seem that defendant was bound to provide reasonable station facilities.

The claim that the case was prematurely tried and that defendant was prejudiced thereby is unsupported by the facts. The summons was served eighty-four days before the time of trial, and trial had fourteen days after issues were joined. Nothing appears to show premature trial. The defendant had twenty days in which to file an answer, but it answered within ten days with a general denial. It was not tried for fourteen days after it was at issue, and was properly docketed for trial.

Defendant complains of the court's refusal of a requested instruction on the degree of care owed a passenger in or about the depot. There was no issue as to degree of care required and the court committed no error. The instruction given was adequate.

The evidence has been considered, and is held sufficient, if believed by the jury, as it evidently was, to sustain the findings and judgment rendered.

The judgment is affirmed.